Filed 5/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ISABEL GARCIA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STONELEDGE FURNITURE LLC et al.,<br><br>        Defendants and Appellants. | A166785<br><br>(Sonoma County<br>Super. Ct. No. SCV269300) |

Stoneledge Furniture LLC (Stoneledge), RAC Acceptance East, LLC (RAC), and Inderjit Singh (collectively, defendants) appeal from the trial court's denial of their petitions to compel arbitration of Isabel Garcia's lawsuit against them.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Garcia is employed by RAC, a company that offers financing for purchases.  On her first day of work in early 2016, she completed onboarding paperwork using Taleo, a third-party electronic workforce management platform used by RAC.

Starting in 2016, Garcia worked at an RAC kiosk located inside an Ashley HomeStore operated by Stoneledge.  In 2019, Singh began working as an Ashley HomeStore Sales Manager at that same location; he and Garcia worked in close physical proximity and interacted regularly.  In 2020, Garcia reported to Ashley's Human Resources department that Singh sexually

assaulted her in his office, and she took a leave of absence. Singh continued working at the same Ashley HomeStore. Upon returning from the leave of absence, Garcia accepted RAC's offer to work in a different position and at a different location.

*Garcia's Complaint*

In 2021, Garcia filed a complaint against defendants alleging ten claims related to her allegation that Singh sexually harassed her. The operative second amended complaint asserts causes of action for sexual battery, battery, unlawful sexual violence, intentional infliction of emotional distress, false imprisonment, and gender violence against all defendants; three claims under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) against RAC; and a claim of negligent hiring, training, supervision, and retention against Stoneledge.

*Petitions to Compel Arbitration*

RAC petitioned to compel arbitration pursuant to an arbitration agreement it claimed Garcia electronically signed during the onboarding process on her first day of employment.

In support of the petition, RAC submitted a declaration by Jared Dale, a Human Resources Information Systems Analyst for RAC, that included the following statements. During Garcia's onboarding, she created a unique user ID and confidential password using Taleo. Garcia executed an Electronic Signature Acknowledgement and Agreement stating her Taleo password would serve as her electronic signature on new hire documents. Garcia clicked on the link to review a standalone arbitration agreement, and she electronically signed the arbitration agreement. Garcia's assent was evidenced by an electronic signature block with her name next to an execution date of February 4, 2016, as well as her name separately typed on

the arbitration agreement.  Upon completion of the new hire paperwork, Garcia exited the Taleo platform, after which neither she nor anyone else could make any changes to the arbitration agreement, except by hand on printed copies.  All personnel documents, including completed arbitration agreements, were stored electronically in a confidential and secure manner and were accessible only to management level employees or Human Resources employees who were granted access.

Dale's declaration attached the arbitration agreement.  The agreement stated in part: "[RAC] and I mutually consent to the resolution by arbitration of all claims or controversies . . . , past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that [RAC] may have against me or that I may have against" RAC.  The agreement also provided the Federal Arbitration Act (9 U.S.C. § 1 et seq., FAA) "shall govern this Agreement."  A typed signature at the end of the agreement appeared as "Maria Isabel Izzy Garcia" with the typed name "Maria Garcia" printed underneath.  A signature by an authorized representative for RAC also appeared on the agreement.  The agreement contained no IP address or other data indicating it was executed electronically, nor did it reference using a Taleo password to evince an electronic signature.

Stoneledge petitioned to compel arbitration on the same grounds and in reliance on Dale's declaration.  Stoneledge acknowledged it was not a signatory to the arbitration agreement but argued it could enforce it through equitable estoppel.  It further contended that, because the agreement contained a delegation clause giving the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability

3

or formation" of the arbitration agreement, any such dispute Garcia may raise must be decided by the arbitrator. Singh joined Stoneledge's petition.

Garcia opposed the petitions to compel arbitration. She argued that RAC failed to meet its burden to prove she executed the agreement as Dale was not present when she completed the onboarding paperwork, and he did not attest to having personal knowledge that she electronically signed the agreement. She further argued that, because no agreement existed, the delegation clause relied upon by Stoneledge and Singh was inapplicable.[1]

Aside from arguing the inadequacy of Dale's declaration, Garcia noted the purported arbitration agreement lacked indicia of trustworthiness present in other documents she electronically signed during the onboarding process. Garcia submitted five documents she electronically signed during the onboarding process, all of which differed from the arbitration agreement in several key respects. First, all five documents showed "Maria Garcia" underneath "E Signature." In contrast, the arbitration agreement showed her name as "Maria Isabel Izzy Garcia," and Garcia averred she did not include "Izzy" in her electronic or handwritten signature. Second, all five documents indicated Garcia assented to agreement by inputting her Taleo password, while the arbitration agreement contained no such indication. Third, four of the documents contained the same IP address underneath the electronic signatures while the arbitration agreement did not reflect any IP address.

---

[1]     Garcia further argued the arbitration agreement was unconscionable; the delegation clause was unenforceable; Stoneledge and Singh could not meet the standard for equitable estoppel; and arbitration could not be compelled because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (9 U.S.C. §§ 401, 402) applied. In denying the petitions to compel arbitration, the trial court did not reach or did not rely on these arguments. Nor do we.

Garcia flatly denied signing the arbitration agreement. Her declaration stated she "did not electronically sign" the exhibit representing the arbitration agreement or "recall being asked to sign" it, nor was she given a paper copy of the document. Garcia did not recall receiving any information about "what arbitration is or what it means" during the onboarding process and was never told that by signing any document she would waive her right to sue in court. In addition, she did not recognize the name of the company representative on the arbitration agreement, did not know who Dale was, and stated that no one was present when she electronically signed the new hire documents.

In reply, RAC claimed Garcia's declaration did not establish that she did not sign the arbitration agreement, as she stated she did not "recall" being asked to sign it and stated she did not sign the "[e]xhibit" attached to Dale's declaration, which was only a copy of the agreement. Further, the Electronic Signature Acknowledgement and Agreement—the authenticity of which Garcia did not challenge—contained the name "Maria Isabel Izzy Garcia." Stoneledge's reply (which Singh joined) similarly argued RAC had proven the existence of an arbitration agreement and asserted an arbitrator must decide the issues raised in Garcia's opposition.

*Tentative Ruling and Hearing*

In a tentative ruling, the trial court found RAC had met its initial burden to show an agreement to arbitrate by providing the agreement, but that Garcia's denial of signing the agreement shifted the burden back to RAC to prove by a preponderance of the evidence that her electronic signature was authentic. It further found RAC failed to meet this burden as Dale's declaration did not present sufficient details of the onboarding process to establish how he knew Garcia must have signed the agreement, and the

5

agreement did not have the appearance of an electronically signed document created in Taleo. As RAC failed to meet its burden to show the existence of an enforceable arbitration agreement, the court declined to consider whether the agreement's delegation clause required an arbitrator to determine the issue of contract formation.

At the hearing on the petitions to compel arbitration, RAC and Stoneledge averred, *for the first time*, that an evidentiary hearing was warranted as to disputed facts regarding whether a valid agreement existed. RAC asked for an evidentiary hearing to provide further evidence in support of its petition, such as testimony from Dale. Neither RAC nor Stoneledge explained why there had previously been no request for an evidentiary hearing. Garcia argued an evidentiary hearing was not warranted as RAC already had the opportunity to try to prove authentication. She noted RAC could have provided a supplemental declaration with its reply that filled in the factual gaps to meet its burden to prove the agreement was authenticated but failed to do so.[2]

*Trial Court's Ruling*

In a detailed written order, the trial court denied the petitions to compel arbitration. The court found RAC met its initial burden by providing a copy of the agreement to arbitrate with its petition. However, because Garcia declared she did not sign the agreement or remember anyone asking her to do so, the burden shifted back to RAC to prove the authenticity of Garcia's signature by a preponderance of the evidence. The court concluded RAC failed to do so. It found Dale's declaration failed to establish the

---

[2]     RAC offered to submit a supplemental declaration by Dale to buttress its evidence of authentication, but the trial court declined to accept any new filings at the time of the hearing.

6

electronic signature was " 'the act of' " Garcia because he was not a percipient witness; he merely stated that Garcia created a unique user ID and confidential password as part of the onboarding process, before summarily concluding she electronically signed the agreement. The court also suggested the declaration lacked sufficient detail regarding the security precautions employed by RAC, noting that managers had access to arbitration agreements. Further, the arbitration agreement lacked the appearance of an electronically signed document as it contained no date, time, or IP address, nor any indication it was created within the Taleo system. Accordingly, RAC failed to establish the existence of an agreement to arbitrate.

The trial court concluded Stoneledge and Singh could not rely on equitable estoppel to compel arbitration given RAC's failure to meet its burden to establish an arbitration agreement. As to their argument regarding the delegation clause, the court concluded the lack of an agreement to arbitrate meant there was no delegation clause for it to consider.

Finally, the trial court denied RAC's and Stoneledge's belated request for an evidentiary hearing. It noted they made the request for the first time at the hearing and found an evidentiary hearing would not resolve any factual disputes as there was no conflicting evidence.

Defendants appealed the denial of the petitions.

### DISCUSSION

Defendants challenge the trial court's order denying their petitions to compel arbitration on two grounds. First, they argue the court erred by failing to delegate to an arbitrator the decision of whether Garcia and RAC entered into an agreement to arbitrate. Second, they contend the court erred by finding RAC failed to prove the existence of an agreement. We are not persuaded.

7

## I. The Trial Court Did Not Err in Deciding Whether Defendants Established the Existence of an Agreement to Arbitrate

We first consider whether the trial court erred by deciding whether any agreement to arbitrate existed in the first place, rather than delegating that decision to an arbitrator. Applying a de novo standard of review to this question of law, we find the trial court did not err. (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*) ["On appeal, we review orders denying motions to compel arbitration for abuse of discretion unless the matter presents a pure question of law, which we review de novo."].)

It has been long established that "when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*); accord, *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1108 ["[C]hallenges to the validity of the arbitration clause itself are generally resolved by the court in the first instance."]; see Code Civ. Proc., § 1281.2.)

However, Stoneledge and Singh assert the trial court should not have determined the existence of an agreement to arbitrate because the agreement's delegation clause served as an "antecedent agreement" to have the arbitrator decide the "gateway" issue of contract formation. The delegation clause at issue states: "The Arbitrator, and not any federal, state, or local court . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."

As evidenced by their misplaced reliance on *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63 (*Rent-A-Center*) and *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231 (*Tiri*),  Stoneledge and Singh confuse the question of *enforceability* of an arbitration agreement (including whether the underlying dispute is subject to arbitration), with the question of the *existence* of any agreement at all.

In *Rent-A-Center*, *supra*, 561 U.S. 53, an employee sued his former employer in federal court and the employer moved to compel arbitration. (*Rent-A-Center*, at p. 65.)  The employee opposed the motion on the ground that the arbitration agreement was unenforceable because it was unconscionable under state law.  (*Id.* at p. 66.)  Critically for purposes of the case before us, the employee did *not* contend that there was no agreement in the first instance.  The Supreme Court concluded that, because the employee challenged the *enforceability* of the entire arbitration agreement, which the parties clearly and unmistakably delegated to the arbitrator, the enforceability decision was left to the arbitrator rather than the court.  (*Id.* at pp. 71–73.)  Similarly, in *Tiri*, another case in which the existence of an agreement was not in dispute, our colleagues concluded the trial court lacked the authority to decide whether an arbitration agreement was enforceable because "the parties agreed to delegate questions about the *enforceability* of the agreement to the arbitrator, instead of a court."  (*Tiri*, *supra*, 226 Cal.App.4th at p. 236, italics added.)

Stoneledge and Singh make much of *Rent-A-Center*'s statement that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate."  (*Rent-A-Center*, *supra*, 561 U.S. at pp. 68–69.)  This argument is much ado about nothing as there was no challenge (in either *Rent-A-Center* or *Tiri* for that matter) to the existence

9

of an agreement to arbitrate anything at all.  We decline to expand the "gateway" language to a circumstance not before the Supreme Court and not addressed by the Supreme Court.  This is especially so as the Supreme Court reiterated its prior holdings that " '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so' "; without such evidence, " 'the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " (*Rent-A-Center*, at p. 69, fn. 1.)

Simply put, parties may delegate questions regarding the validity of an arbitration agreement (such as enforceability in the face of a challenge based on unconscionability) or aspect of an arbitration agreement (such as whether a particular claim is subject to the arbitration agreement) to the arbitrator if they clearly and unmistakably agree to do so. (*Rent-A-Center*, *supra*, 561 U.S. at p. 69, fn. 1.)  However, the delegation of such questions presupposes the existence of an agreement between the parties, which the court necessarily had to decide before it could enforce any such delegation.  To conclude otherwise would mean that a party need only fabricate a signature on an alleged arbitration agreement to bypass the courts and send a dispute to arbitration.  We do not suggest this occurred here, but we decline to embrace an interpretation of the law that could lead to such results.  (See *ibid.*)

## II.  RAC Failed to Prove the Existence of an Agreement to Arbitrate

We now consider whether RAC met its burden to prove the existence of the arbitration agreement.

In determining the existence of an agreement to arbitrate, the trial court must employ a three-step burden shifting process.  (*Iyere, supra,* 87 Cal.App.5th at p. 755.)  The party seeking to compel arbitration bears an

10

initial burden to show an agreement to arbitrate; that burden can be met by providing a copy of the alleged agreement. (*Ibid.*) If that initial burden is met, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence, thereby shifting the burden back to the arbitration proponent. (*Ibid.*) At that point, and "[b]ecause the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal*, *supra*, 14 Cal.4th at p. 413.)

"In these summary proceedings, the trial court sits as a trier of fact," weighing the evidence to reach a final determination. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) Ordinarily, "the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion." (*Rosenthal*, *supra*, 14 Cal.4th at pp. 413–414.) An evidentiary hearing is therefore not required but is appropriate if the enforceability of an agreement depends on "which of two sharply conflicting factual accounts is to be believed." (See *id.* at p. 414.)

Even when an agreement provides that it is governed by the FAA, courts must first apply state law principles in determining whether the parties entered into an agreement to arbitrate. (*Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 1229; see also *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.)

The parties do not dispute that RAC met its initial burden by attaching to its petition a copy of the arbitration agreement purporting to contain Garcia's electronic signature. (See *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).) RAC asserts the trial court erred in (1) finding Garcia's declaration created a factual dispute, thereby shifting the burden back to RAC to prove the existence of an

11

agreement, and (2) finding RAC failed to meet that burden. We disagree on both points.

## A. Garcia Shifted the Burden to RAC to Prove Authentication

RAC contends Garcia failed to raise a factual dispute as to the authenticity of the electronic signature on the arbitration agreement. RAC asserts Garcia never affirmatively stated she did not sign the arbitration agreement, but rather declared that she did not "recall being asked to sign" the agreement and did not electronically sign the *exhibit* to Dale's declaration, which RAC notes was "simply a duplicate" of the arbitration agreement. In fact, Garcia did state in her declaration that she "did not electronically sign" the exhibit.

A party opposing arbitration by challenging the authenticity of his or her signature "need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent." (*Iyere, supra,* 87 Cal.App.5th at p. 755.) We join the legion of courts that have concluded a denial of signing an arbitration agreement is sufficient to shift the burden. (See *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 [collecting cases where opposing party's denial of seeing or signing arbitration agreement was sufficient to shift burden back to moving party to prove existence of agreement].) And while Garcia's denial was adequate, we note she also provided additional evidence comparing the arbitration agreement to the other documents she signed on that same day and in that same manner; documents that bore indicia of reliability not evidenced by the arbitration agreement.

Finally, we readily dispose of RAC's red herring argument that Garcia denied signing a *copy* of the arbitration agreement rather than the agreement

12

itself, as any rational reader of Garcia's declaration would understand that her denial of signing the exhibit representing the agreement was a denial of signing the agreement itself.

## B. The Trial Court Did Not Err in Denying the Petitions to Compel Arbitration

### 1. RAC Failed to Prove Authentication

When, as here, the trial court's decision "is based on the court's finding that [the party seeking arbitration] failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) " ' "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Id.* at p. 1067.)

"For this reason, ' "[w]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for [that party] to prevail on appeal by arguing the evidence compels a judgment in [that party's] favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' " (*Fabian, supra*, 42 Cal.App.5th at p. 1067.) " 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment.' " (*Ibid.*)[3]

---

[3] RAC and Garcia contend we review this issue for substantial evidence, which some courts, including our own, have applied. (See *Bannister v.*

13

As discussed above, RAC bore the burden to prove the authenticity of the signature on the arbitration agreement. (See *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 (*Ruiz*).) A proponent seeking to authenticate an electronic signature must show the electronic signature " 'was the act of the person,' " which could be shown " 'in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.' " (*Id.* at p. 843, italics omitted; see Civ. Code, § 1633.9, subd. (a).) For example, a party may present evidence that the signatory was required to use a unique, private login and password to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions. (*Espejo, supra*, 246 Cal.App.4th at p. 1062.)

Here, RAC failed to carry its burden because the evidence it provided—which rested entirely on Dale's declaration—did not show that *only* Garcia could have placed the electronic signature on the arbitration agreement. (See *Ruiz, supra*, 232 Cal.App.4th at p. 844.) Although Dale declared that Garcia created a unique user ID and confidential password using Taleo, he did not explain how he knew that the name "Maria Isabel Izzy Garcia" could have only been placed on the agreement using Garcia's user ID and password and not the other onboarding documents. (See *id.* at pp. 844–845.) Instead, Dale summarily concluded that Garcia electronically signed and acknowledged the agreement before exiting out of Taleo, with the only purported evidence being her name on the agreement.

---

*Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545.) We need not resolve this issue because the outcome would be the same under either standard.

14

Contrary to RAC's assertion, this was insufficient to meet the authentication requirements described in *Ruiz*. (See *Ruiz, supra*, 232 Cal.App.4th at pp. 844–845.) The trial court found that Dale's declaration did not detail the security precautions regarding the use of the Taleo username and password; the arbitration agreement lacked a date, time, or IP address; and the agreement contained no indication it was created within the Taleo system. The court also took into consideration and credited Garcia's statements disputing the reliability of the evidence given the differences between the arbitration agreement and other documents she signed the same day and in the same manner.

Given the evidence before the court, we conclude the court did not err as a matter of law, and we accordingly reject RAC's challenge to the court's finding that it failed to establish the authenticity of the signature on the agreement.[4] (See *Fabian, supra*, 42 Cal.App.5th at p. 1067 [It is not our role to reweigh the evidence or substitute our factual determinations for that of the trial court].)

### 2. Request for an Evidentiary Hearing

Finally, RAC and Singh contend the trial court erred in denying the request for an evidentiary hearing. This basis for reversal has been forfeited as neither defendant requested an evidentiary hearing until *after* the trial court issued an adverse tentative ruling. In fact, they did not request it until the actual hearing on the petition to compel arbitration. (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 ["Appellate courts are loath to reverse a judgment on grounds that the

---

[4]     As we conclude no agreement to arbitrate existed, we do not reach Stoneledge's argument that it could rely on equitable estoppel to enforce the agreement.

15

opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider."].)[5]

If we were to reach the merits, we would conclude the trial court did not abuse its discretion by declining to hold an evidentiary hearing. (See *Rosenthal*, *supra*, 14 Cal.4th at p. 414.) As noted above, a trial court may— but is not required to—hold an evidentiary hearing on a petition to compel arbitration. (*Id.* at pp. 413–414.)

RAC contends the court was obligated to conduct an evidentiary hearing once it found there was a material factual dispute as to the authenticity of Garcia's signature on the arbitration agreement.[6] However, "there is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Rosenthal*, *supra*, 14 Cal.4th at p. 414.) Here, RAC's sole basis for seeking an evidentiary hearing was to allow it to have an additional opportunity to meet its burden of proof. But, contrary to its suggestion at the hearing, RAC could have provided a supplemental declaration in reply to Garcia's opposition yet failed to do so. (See, e.g., *Espejo, supra*, 246 Cal.App.4th at p. 1060 [error to strike supplemental declaration needed to establish authenticity of employee's

---

[5]     RAC also argues the trial court abused its discretion by "denying RAC's request for limited discovery." However, at no point did RAC ask the court to allow for limited discovery; the sole mention of discovery during the hearing was in relation to cases cited by RAC in support of its request for an *evidentiary hearing*. Accordingly, this argument is forfeited. (See *Truck Insurance Exchange v. AMCO Insurance Company* (2020) 56 Cal.App.5th 619, 635.)

[6]     Singh asserts an evidentiary hearing was required by Section 4 of the FAA, but the FAA did not apply until a valid agreement to arbitrate was found to exist under state law principles. (See *Lopez v. Charles Schwab & Co., Inc.*, *supra*, 118 Cal.App.4th at p. 1229.)

16

electronic signature as untimely]; *Ruiz, supra*, 232 Cal.App.4th at p. 844 [court considered supplemental reply declaration in deciding employer failed to establish employee placed electronic signature on arbitration agreement].) Under these circumstances, we conclude the trial court did not abuse its discretion in denying RAC's request for an evidentiary hearing.

**DISPOSITION**

The order denying defendants' petitions to compel arbitration is affirmed.  Garcia shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Rodríguez, J.


A166785/ *Garcia v. Stoneledge Furniture, LLC et al.*

18

Trial Court:        Sonoma County Superior Court

Trial Judge:        Hon. Patrick M. Broderick

Counsel:            Morgan, Lewis, and Bockius, Barbara J. Miller, David J. Rashé and Kimerli A. Williams for Defendant and Appellant Stoneledge Furniture LLC.

                    Weston Herzog and Jonathon J. Herzog for Defendant and Appellant Inderjit Singh.

                    K&L Gates, Eugene C. Ryu and Ashley Song for Defendant and Appellant RAC Acceptance East, LLC.

                    Emily Nugent Law, Emily A. Nugent; Shukla Law and P. Bobby Shukla for Plaintiff and Respondent.