Filed 11/21/24  Dyer v. New American Funding CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAUNA DYER,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>NEW AMERICAN FUNDING, LLC,<br><br>　　　　Defendant and Appellant. | A169485<br><br>(Sonoma County Super Ct.<br>　No. SCV-273823) |

New American Funding, LLC (NAF) appeals from an order denying its motion[1] to compel arbitration of plaintiff Shauna Dyer's claims, arguing that the trial court failed to apply the appropriate burden shifting framework and created a higher evidentiary standard than supported by applicable law.  We disagree and affirm.

## BACKGROUND

In October 2020, Dyer began working with NAF as a "Loan Officer Assistant" for NAF's outside loan agent division.  Dyer was diagnosed with

---

[1] This opinion uses the term "motion" instead of "petition" because NAF sought an order compelling arbitration of Dyer's claims.  (Code Civ. Proc., § 1003 ["An application for an order is a motion"]; see also *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 302 [construing a writ petition "as an application for an order, which is the definition of a 'motion'" and noting the term " 'motion' is broad enough to include petitions"].)

1

cancer in February 2022, and the parties ended their relationship in September 2022, when Dyer exhausted her approved leave.[2]

In July 2023, Dyer filed a complaint against NAF, alleging various employment-related claims. In response, NAF moved to compel arbitration of Dyer's claims pursuant to an electronically executed "Comprehensive Agreement Employment At-Will and Arbitration Policy" (the arbitration agreement), which purportedly bears Dyer's electronic signature and a "Time Signed" of October 6, 2020 at 6:51 p.m. NAF restated the relevant terms of the arbitration agreement in its motion and attached a copy of the agreement to the declaration of Renae Souza.

Souza, NAF's "Senior Vice President ('SVP'), People & Culture," declared that at the time of Dyer's hire, "NAF utilized Adobe Echo Sign as its electronic recruitment and onboarding platform," and that Dyer used Adobe Echo Sign to "review and complete[] her onboarding documents, including the Arbitration Agreement," which Souza represented had been sent to Dyer's personal email address after completion. In support of the claim, Souza attached to her declaration an "Adobe Echo Sign Final Audit Report" (the audit report), which detailed NAF's creation and transmittal and Dyer's viewing and electronic signing of an "Offer of Employment – Shauna Dyer" (the offer letter).[3] The audit report reflected that the offer letter was emailed to Dyer on October 6, 2020 at 5:55:57 p.m. Greenwich Mean Time, that Dyer viewed the offer letter at 6:45:43 p.m., and that Dyer electronically signed the offer letter at 9:57:12 p.m. the same day. NAF asserted that the audit report

---

[2] Although not material to this appeal, NAF represents that Dyer "voluntarily resigned from her position," whereas Dyer asserts that she was "fired" when NAF would not "extend her unpaid leave" so that Dyer could "finish her radiation treatments" and "heal" from surgery.

[3] NAF did not provide a copy of the offer letter.

demonstrated that Dyer electronically signed the arbitration agreement, even though the arbitration agreement was not specifically listed in the audit report.

In opposition, Dyer declared that she did not recall "seeing" or "signing" the arbitration agreement on October 6 or "anytime during [her] employment" with NAF. Dyer claimed that she did "not think [she] signed the Arbitration Agreement" and explained that the electronic signature did not look like hers because it was "too neat" and Dyer would have "connect[ed] the S to the D." Further, Dyer declared that she "checked" her email and "was not emailed a copy of the Arbitration Agreement, contrary to Souza's declaration."[4]

Dyer also provided a copy of the offer letter, a five-page document bearing Dyer's electronic signature[5] and dated October 6, 2020 at "14:57 PDT." Dyer conceded that she signed the offer letter on October 6 "at 2:57 p.m.," which we interpret to mean 9:57 p.m. Greenwich Mean Time, but noted that the arbitration agreement appeared to have been signed at a different time, which also differed from the times specified in the audit report.

On reply, NAF maintained that Dyer "was sent to the Adobe Echo Sign portal to acknowledge her offer letter and begin and complete the onboarding process, which included acknowledging receipt of and digitally signing NAF's Arbitration Agreement that is housed in the Adobe Echo Sign portal." NAF

---

[4] According to Dyer, she looked in "all folders and did searches" but did not find a copy of the arbitration agreement; Dyer further declared that she "would not have deleted emails pertaining to [her] work with" NAF.

[5] This signature is computer generated text, whereas the signature on the purported arbitration agreement was created using a mouse or touchpad.

further argued that Dyer's "ambiguous" declaration was "insufficient" to avoid arbitration.

On December 12, the court issued a tentative ruling, stating that because Dyer asserted "that the Arbitration Agreement was not signed by her, . . . the proper course is for the court to set a hearing on the matter so the credibility of the parties may be assessed and weighed."

At the ensuing December 15 hearing, Souza testified as the sole witness called by either side.[6] In contrast with her earlier declaration, Souza testified Dyer signed the arbitration agreement "using a different system than Adobe Echo Sign." Souza stated instead that Dyer's "arbitration agreement was electronically executed using a program from ADP, a third-party human resource service provider which [NAF] no longer use[d]." Souza explained that, like Adobe Echo Sign, ADP required Dyer to create a unique username and password, but "when asked to provide an audit trail of the arbitration agreement as [NAF] had done with" its moving papers, NAF could not because it "no longer [had] access" to the ADP platform.

On December 20, 2023, the court prepared and issued a written order after hearing that restated the tentative ruling in large part but ultimately denied the motion: "[NAF was] unable to meet its initial burden, by a preponderance of the evidence, in establishing that [Dyer] properly authorized the affixing of her electronic signature on the arbitration agreement."

NAF timely appealed.

---

[6] The hearing was not reported, nor is there a settled statement of facts in the appellate record, thus, our recount of the testimony is taken from the trial court's December 20, 2023 order denying NAF's motion.

4

## DISCUSSION

NAF contends the trial court erred "by failing to apply the appropriate burden shifting analysis and creating a higher evidentiary standard than supported by applicable case law." NAF also challenges the adequacy of Dyer's declaration and asserts its evidence required arbitration as a matter of law; it further argues that the trial court's order contravenes public policy and must be reversed.

The existence of an agreement to arbitrate disputes is a statutory prerequisite to granting a motion to compel arbitration. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) The party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence," and the trial court decides the issue in a summary proceeding, sitting as the trier of fact, weighing evidence and assessing credibility. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

When a motion to compel arbitration involves a disputed electronic signature, courts "resolve the dispute using a three-step burden-shifting process."[7] (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*); accord, *West v. Solar Mosaic LLC* (2024) 105 Cal.App.5th 985.)

In the first step, "the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy.'" (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*), quoting *Rosenthal*, *supra*, 14 Cal.4th at p. 413.) The moving party satisfies this initial burden by stating verbatim the provisions of the agreement or by attaching a copy of the agreement to the motion. (*Espejo v.*

---

[7] Because both NAF and Dyer use this burden-shifting framework, we assume without deciding it applies here.

5

*Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1058, citing *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218; see also Cal. Rules of Court, rule 3.1330.)  "For this step, 'it is not necessary to follow the normal procedures of document authentication.' " (*Gamboa*, at p. 165.)  If the arbitration agreement is not disputed, "then nothing more is required for the moving party to meet its burden of persuasion." (*Ibid*.)

But, "[i]f the moving party meets its initial prima facie burden *and* the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa*, *supra*, 72 Cal.App.5th at p. 165, italics added.) The opposing party "need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent . . . ." (*Iyere*, *supra*, 87 Cal.App.5th at p. 755.)

If there is a factual dispute, the court proceeds to the third step, in which "the moving party must establish with admissible evidence a valid arbitration agreement between the parties" by a preponderance of the evidence.  (*Gamboa*, *supra*, 72 Cal.App.5th at pp. 165–166, citing *Rosenthal*, *supra*, 14 Cal.4th at p. 413.)  In deciding if a contested arbitration agreement is valid, the trial court may, in its discretion, "hear oral testimony and allow the parties the opportunity for cross-examination." (*Rosenthal*, at p. 414.)

When a trial court finds that the party seeking arbitration failed to carry its burden, it is " ' "almost impossible" ' " to prevail on appeal.  (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066–1067 (*Fabian*).) This is because, on appeal, we presume the trial court found the evidence lacked sufficient weight and credibility to satisfy the burden of proof—a

finding that is binding on us as the reviewing court. (*Id.* at p. 1067; *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1196, review den. May 15, 2024 (*Jones*).) Therefore, unless the trial court made a specific finding of fact in favor of the losing party, all factual matters must be viewed in support of the judgment, and all conflicts must be resolved in favor of the prevailing party. (*Jones*, at p. 1196.)

Accordingly, where, as here, the trial court finds the moving party failed to meet its burden of proof, " ' "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Fabian, supra,* 42 Cal.App.5th at p. 1067, quoting *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978–979.) To prevail under this standard, "the appellant must show that his evidence compelled a finding that he met his burden of proof *as a matter of law.*" (*Jones, supra,* 99 Cal.App.5th at p. 1196, italics added.)[8]

In its primary contention, NAF relies on the court's statement in its order after hearing that NAF "is unable to meet its *initial burden,* by a preponderance of the evidence" to argue that the trial court improperly held it to a preponderance of the evidence standard—rather than a prima facie

---

[8] While NAF concedes that *Fabian* applies here, it also suggests that "the applicable analysis hinges on whether the trial court's finding was erroneous as a matter of law *or lacked the support of substantial evidence.*" (Italics added.) But, "it is 'misleading' to say that the review is for substantial evidence" where "the decision is based on a failure of a party to meet its burden of proof." (*Jones, supra,* 99 Cal.App.5th at p. 1196.) Regardless, as discussed herein, the court's findings are supported by substantial evidence. (See, e.g., *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545, fn. 1.)

showing—under the first step of the three-part burden-shifting analysis. But NAF's reliance on the term "initial" is misplaced and overlooks the entirety of the court's findings.

For example, with the exception of adding the ultimate finding that NAF failed to carry its burden, the court's order after hearing is substantively identical to its December 12 tentative ruling. In both, the court properly set forth the applicable law,[9] specifically explaining "the validity of the signature in an agreement to arbitrate is a foundational fact when compelling arbitration," citing *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842–843. And although "a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration," the court explained that when the signature is challenged, it "places the burden on [NAF] as the moving party" to authenticate the signature. (*Id.* at p. 846.) The court continued, "Where allegations of fraudulent agreements to arbitrate exist, and are opposed, 'the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination,' " citing *Rosenthal*, *supra*, 14 Cal.4th at page 414.

---

[9] "A party seeking to compel arbitration pursuant to [Code of Civil Procedure section] 1281.2 must 'plead and prove a prior demand for arbitration under the parties' arbitration agreement and a refusal to arbitrate under the agreement.' *Mansouri v. Sup. Ct.* (2010) 181 Cal.App.4th 633, 640–641. It must also prove by a preponderance of evidence the existence of the arbitration agreement and that the dispute is covered by the agreement. See, e.g., *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396–397, 399–400. State law applicable to contracts generally governs whether a valid agreement to arbitrate exists. *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701."

At this point, the tentative ruling set the matter for evidentiary hearing, thereby demonstrating that the court found NAF had satisfied its initial burden by attaching the arbitration agreement to its moving papers, but that Dyer then sufficiently challenged the execution of that arbitration agreement through her own declaration. Lest there be any confusion, in both the tentative ruling and final order, the court stated in a separate heading: "The Arbitration Agreement Clearly Applies to [NAF]."[10] This explicit statement confirms the court found NAF had satisfied the first prima facie step, i.e., the presentation of an applicable arbitration agreement. Accordingly, NAF's argument that the trial court misapplied the law is unfounded.

Next, NAF contends that Dyer's declaration "falls short of the mark of 'substantial evidence,' " and that NAF offered "uncontradicted and unimpeached" evidence of the existence of an arbitration agreement that leaves no room for a judicial determination of insufficiency. Both arguments fail.

First, Dyer's challenge of the electronic signature on the arbitration agreement raised a factual dispute. Dyer not only declared that she did not recall seeing or signing the agreement (*Ruiz v. Moss Bros. Auto Group, Inc.*, *supra*, 232 Cal.App.4th at p. 844 [finding declaration that plaintiff "did not recall electronically signing the 2011 agreement" sufficient to raise a factual dispute]), but she also identified specific issues with the handwriting (cf. *Iyere*, *supra*, 87 Cal.App.5th at p. 757 ["If the individual does not deny that the handwritten personal signature is his or her own, that person's failure to

---

[10] In stating so, the trial court rejected Dyer's argument that "the Arbitration Agreement is not legally applicable to the parties" based on the agreement's reference to NAF's predecessor company. That determination is not contested on appeal.

9

remember signing is of little or no significance"]). Thus, Dyer's declaration provides, at least, substantial evidence supporting the court's finding of a factual dispute regarding the execution of the arbitration agreement.

Moreover, NAF's evidence was not "uncontradicted." As noted above, Souza declared that Dyer signed the arbitration agreement using Adobe Echo Sign, while Dyer declared that she did not recall seeing or signing the agreement and raised disputes concerning the signature and timestamp. Given the conflicting declarations, the court held an evidentiary hearing where Souza was called to rebut Dyer's disputes. However, as the trial court found, Souza testified inconsistently with her original declaration, creating a new area of doubt rather than clarifying the existence of any arbitration agreement. Thus, contrary to NAF's argument, contradictions existed between Souza's initial declaration and her live testimony.

Nor can we say that NAF's evidence is of such weight and character as to require a judicial determination that Dyer executed the arbitration agreement. (See, e.g., *Jones*, *supra*, 99 Cal.App.5th at p. 1192.) For example, NAF asserts that "Souza's testimony detailed NAF's security protocols" "sufficient to establish by a preponderance of the evidence that" Dyer signed the arbitration agreement. However, we have no such testimony before us because the record on appeal does not contain a transcript of the hearing or a settled statement of the testimony. Where the record is silent, all presumptions are indulged in support of the challenged order. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Accordingly, we have no ability to separately consider the weight and character of Souza's testimony at the evidentiary hearing.

NAF's final argument is that the court's denial of its motion to compel arbitration "runs contrary to the strong public policy in favor of arbitration

10

and enforcing contracts freely entered into by the parties." We disagree. "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . ." (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.) Therefore, because NAF failed to demonstrate that Dyer signed the arbitration agreement, the policy favoring arbitration is not implicated; "a party cannot be compelled to arbitrate a dispute" that she "has not agreed to resolve by arbitration." (*Ibid.*)

## DISPOSITION

The order is affirmed. Dyer is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
DESAUTELS, J.

We concur:


_____
STEWART, P. J.


_____
MILLER, J.


*Dyer v. New American Funding, LLC* (A169485)