Filed 12/23/14

CERTIFIED FOR PUBLICATION

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ERNESTO RUIZ, | |
| Plaintiff and Respondent, | E057529 |
| v. | (Super.Ct.No. CIVDS1207201) |
| MOSS BROS. AUTO GROUP, INC., | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Fine, Boggs & Perkins, John P. Boggs, David J. Reese, and Ian G. Robertson for Defendant and Appellant.

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler, Kitty Szeto, John M. Bickford; Lawyers for Justice and Edwin Aiwazian for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant and appellant, Moss Bros. Auto Group, Inc. (Moss Bros.), appeals from an order denying its petition to compel arbitration of the employment-related and putative

class action, representative, and individual claims of its service technician employee, plaintiff and respondent, Ernesto Ruiz. The trial court denied the petition on the ground Moss Bros. did not meet its burden of proving the parties had an agreement to arbitrate the controversy. (Code Civ. Proc., § 1281.2.)[1] No statement of decision was requested or issued (Code Civ. Proc., §§ 632, 1291), but the court implicitly found Moss Bros. did not present sufficient evidence to support a finding that an electronic signature on its proffered arbitration agreement was "the act of Ruiz" (Civ. Code, § 1633.9; Evid. Code, § 1400). We conclude Moss Bros. did not present sufficient evidence to support a finding that Ruiz electronically signed the 2011 agreement. Accordingly, we affirm the order denying the petition.

## II. FACTS AND PROCEDURAL BACKGROUND

A. *The Complaint*

In July 2012, Ruiz filed a putative class action complaint alleging Moss Bros. failed to pay Ruiz and other employees overtime and other wages for all hours worked, provide required meal and rest breaks, provide accurate and complete wage statements, reimburse business expenses, and pay final wages in a timely manner. The complaint also alleges representative claims for civil penalties on behalf of Ruiz, other employees, and the state, pursuant to the Labor Code Private Attorneys General Act of 2004 (the PAGA). (Lab. Code, § 2698 et seq.)

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

B. *The Petition to Compel Arbitration*

In August 2012, Moss Bros. petitioned for an order compelling arbitration of Ruiz's individual claims based on an arbitration agreement it claimed Ruiz electronically signed on or about September 21, 2011 (the 2011 agreement).[2] (§§ 1281.2, 1290.) Moss Bros. asked the trial court to dismiss the purported class action and representative (PAGA) claims on the ground Ruiz waived his right to bring such collective claims by signing the 2011 agreement. The 2011 agreement provides, in part, that the arbitrator may "hear only . . . individual claims" and has no authority to "consolidate[e] the claims of others into one proceeding."[3]

Moss Bros. adduced the declaration of its business manager, Mary K. Main, who was "required to be familiar with the generation and maintenance" of employee personnel

---

[2] The 2011 agreement provides that the employee "and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another . . . arising from, related to, or having any relationship or connection with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . shall be submitted to and determined exclusively by binding arbitration. . . . [The employee agrees] the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act . . . ."

[3] The 2011 agreement purports to bar the signatory employee from bringing class action and representative (PAGA) claims in any forum: "In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective or joint action lawsuit or arbitration (collectively 'class claims')."

3

records.  Main summarily asserted that Ruiz "electronically signed" the 2011 agreement "on or about September 21, 2011," and that the same agreement was presented to "all persons who seek or seek to maintain employment" with Moss Bros. or its affiliated dealerships and service/parts centers.  Main did not explain how Moss Bros. verified that Ruiz, or other Moss Bros. employees, electronically signed the 2011 agreement.[4]

The 2011 agreement is just over two pages in length.  "Ernesto Zamora Ruiz" appears in print on the first page, under the title, "Employee Acknowledgment and Agreement," and the phrases "Ernesto Zamora Ruiz (Electronic Signature)" and "9/21/2011 11:47:27 AM" appear in print on the third page, under the signature and date lines of the 2011 agreement.

---

[4] Relying on *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740, 1745], Moss Bros. asked the trial court to dismiss Ruiz's putative class action and PAGA claims, as part of its order compelling arbitration, on the ground Ruiz waived his right to bring such claims when he electronically signed the 2011 agreement.  It has since become clear, however, that the PAGA claim waiver is unenforceable.  In June 2014, the California Supreme Court held it is a violation of public policy to require an employee to give up his or her right to bring a representative (PAGA) claim in any forum, and such waivers are therefore unenforceable as a matter of California law.  (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360, 383; but see *Lucero v. Sears Holdings Mgmt. Corp.* (Dec. 2, 2014, No. 14-cv-1620) 2014 U.S. Dist. Lexis 168782 [criticizing *Iskanian* and holding, along with other federal courts, that the Federal Arbitration Act preempts California's rule that arbitration agreements that waive an employee's right to bring PAGA claims are unenforceable].)  And, in light of our conclusion that Moss Bros. did not produce sufficient evidence to support a finding that Ruiz electronically signed the 2011 agreement and, therefore, that a valid arbitration agreement existed (§ 1281.2) it is unnecessary to address whether the putative class action waiver in the 2011 agreement is unenforceable (see *Iskanian v. CLS Transportation Los Angeles, LLC, supra,* at pp. 366-374 [questioning whether class action waiver that "more broadly restricts" collective activity than the agreement in issue in *Iskanian* runs afoul of section 7 of the National Labor Relations Act.  (29 U.S.C. § 157.)].)

4

C. *The Opposition Papers*

In opposing the petition, Ruiz argued Moss Bros. failed to meet its burden of proving the parties had a valid agreement to arbitrate the controversy (Code Civ. Proc., § 1281.2) because it did not prove that the electronic signature on the proffered 2011 agreement was an "act attributable" to Ruiz (Civ. Code, § 1633.9, subd. (a)). Ruiz argued that Main's "conclusory statement" that he electronically signed the 2011 agreement was "not enough to prove by a preponderance of the evidence" that he did, in fact, electronically sign the agreement. In his opposing declaration, Ruiz averred he did not recall signing any arbitration agreement on September 21, 2011, or at any other time, and if he had been presented with an agreement that limited his ability to sue Moss Bros. he would not have signed it.

Ruiz further indicated, however, that he *may have signed* an arbitration agreement when he was hired as a service technician for Moss Bros. in March 2010, but he was uncertain. On March 12, his first day of work, he met with his supervisor, Mike Dawe, to process his "new-hire paperwork," and during this meeting he was given a "big stack of forms" and was told he had to sign them. He was given a brief description of each form but not an opportunity to "read each and every form." He then met with Kimberly Pacheco who had him "electronically sign a few [additional] forms," but he did not recall

5

signing any arbitration agreement when he was hired in 2010, and he did not receive copies of any of the forms he was required to sign.**5**

D. *The Reply Papers*

In her reply declaration, Main explained that the Employee Acknowledgement form, including the 2011 agreement Ruiz electronically signed on September 21, 2011, was "presented" to all Moss Bros. employees "as part of a series of changes to the [Company's] Employee Handbook." Main further explained: "Each employee is required to log into the Company's HR system—each with his or her unique login ID and password—to review and electronically execute the Employee Acknowledgement form, which includes the arbitration agreement. While all employees are required to sign the form, they are free to review it at their leisure while logged into the HR system." Still, Main did not indicate *whether or if so how* Moss Bros. ascertained that Ruiz electronically signed, or was the person who electronically signed, the Employee Acknowledgement form, including the 2011 agreement.

Attached to Main's reply declaration were two other arbitration agreements Main claimed Ruiz signed in 2010. Main claimed Ruiz electronically signed one arbitration

---

**5** Ruiz also argued Moss Bros. waived its right to rely on the 2011 agreement because it did not provide a copy of it to his counsel in response to his counsel's May 2012 letter request; the 2011 agreement was unenforceable because it was both procedurally and substantively unconscionable, and the class action and representative (PAGA) claim waivers were unenforceable. Ruiz reiterates these claims on appeal, but it is unnecessary to address them in light of our conclusion that Moss Bros. did not produce sufficient evidence to support a finding that Ruiz electronically signed the 2011 agreement.

6

agreement on March 4, 2010, as part of his online employment application, and signed a second arbitration agreement by hand when he was hired on March 12, 2010.[6] Neither the March 4 or 12, 2010, arbitration agreements are mentioned in the petition, however. The petition sought to compel arbitration based solely on the 2011 agreement which, unlike the 2010 arbitration agreements, included putative class action and PAGA claim waivers.

E. *The Trial Court's Ruling*

Following an October 3, 2012, hearing on the petition, the trial court took the matter under submission. In an October 18 minute order, the court denied the petition on the ground Moss Bros. "failed to establish that an Arbitration Agreement in fact exists between Moss Bros. and Ruiz." No statement of decision was requested, and none was issued. (§§ 632, 1291.) Moss Bros. appealed. (§ 1294, subd. (a).)

---

[6] The March 4 agreement is titled "Applicant Statement and Agreement," and the phrase "Ernesto Zamora Ruiz (electronically signed)" and "March 4, 2010" appear in print just above the signature and date lines. The March 12 agreement is titled "Binding Arbitration Agreement," and Ruiz signed that agreement by hand. The name "Ernesto Zamora Ruiz" appears in print under the signature line, and the date "3-12-10" is written next to the signature.

In another reply declaration, Dawe explained he was "primarily responsible for ensuring that all prospective Service Technicians fill out the necessary new-hire paperwork once they have been hired," and this paperwork includes an arbitration agreement the employee is required to review and sign. Completing all of the paperwork "take[s] anywhere from three hours to a full day" and the employees "are permitted to—and often do—take the paperwork home." Once the employee returns the paperwork to Dawe, he reviews it for completeness, and he had no reason to believe he did not follow the same process when Ruiz was hired [in March 2010].

7

III.  ANALYSIS

A.  *The Petition Was Properly Denied*

"Section 1281.2 requires a court to order arbitration 'if it determines that an agreement to arbitrate . . . exists . . . .'  (§ 1281.2.)"  (*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.)  Sections 1281.2 and 1290.2 create a summary proceeding for resolving petitions to compel arbitration.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)  The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle Museum*).)  The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination.  (*Engalla v. Permanente Medical Group, Inc., supra,* at p. 972.)

Moss Bros. did not request and the court did not issue a statement of decision explaining the factual and legal basis of its order denying the petition.  (§§ 632, 1291.)  Because a statement of decision was available but not requested, we apply the doctrine of implied findings and presume the court made all factual findings necessary to support its

8

order—to the extent substantial evidence supports such findings. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

In finding Moss Bros. "failed to establish that an Arbitration Agreement in fact exists between Moss Bros. and Ruiz" (Code Civ. Proc., § 1281.2), the court implicitly found Moss Bros. did not prove by a preponderance of the evidence that Ruiz was the person who electronically signed the 2011 agreement (Civ. Code, § 1633.9, subd. (a)). Substantial evidence supports this finding. Indeed, based on our de novo review of the undisputed evidence in the record on appeal, we independently conclude Moss Bros. did not present sufficient evidence to support a finding that the electronic signature on the 2011 agreement was the act of Ruiz. (Evid. Code, § 1400, cl. (a); Civ. Code, § 1633.9, subd. (a); *Pinnacle Museum, supra*, 55 Cal.4th at p. 236 [when the evidence is not in conflict the order denying arbitration is reviewed de novo].)

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate,'" and the party seeking arbitration bears the burden of proving the existence of an arbitration agreement. (*Pinnacle Museum, supra*, 55 Cal.4th at p. 236.) Here, Moss Bros. sought to compel arbitration based solely on the written 2011 agreement, which it claimed Ruiz electronically signed.[7] Under Civil Code section 1633.7, enacted in1999 as part of the Uniform Electronic Transactions Act

---

[7] Moss Bros. does not argue that Ruiz orally or implicitly agreed to arbitrate his individual, putative class action, or representative (PAGA) claims. (*Pinnacle Museum, supra,* 55 Cal.4th at p. 236 [recognizing that a signed arbitration agreement is not necessary, and a party's acceptance of an agreement to arbitrate may be expressed by other means, or be implied in fact].)

9

(Civ. Code, § 1633.1 et seq.; Stats. 1999, ch. 428, § 1, pp. 2809-2816), an electronic signature has the same legal effect as a handwritten signature (Civ. Code, § 1633.7, subd. (a) ["[a] . . . signature may not be denied legal effect or enforceability solely because it is in electronic form."]).

Still, any writing must be authenticated before the writing, or secondary evidence of its content, may be received in evidence.  (Evid. Code, § 1401; *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435; *People v. Goldsmith* (2014) 59 Cal.4th 258, 271.) "Authentication of a writing means (a) the introduction of evidence *sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is* or (b) the establishment of such facts by any other means provided by law."  (Evid. Code, § 1400, italics added; *People v. Valdez, supra,* at p. 1435 [proponent meets its burden of producing evidence to show authenticity of writing "'when sufficient evidence has been produced to sustain a finding that the document is what it purports to be.'"]; *People v. Skiles* (2011) 51 Cal.4th 1178, 1187 ["writing can be authenticated by circumstantial evidence and by its contents."].)

Civil Code section 1633.9 addresses how a proponent of an electronic signature may authenticate the signature—that is, show the signature is, in fact, the signature of the person the proponent claims it is.  The statute states:  "(a)  An electronic record or electronic signature is attributable to a person if it was the act of the person. *The act of the person may be shown in any manner*, including a showing of the efficacy of any

security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a), italics added.)

Main summarily asserted in her initial declaration that Ruiz was the person who electronically signed the 2011 agreement "on or about September 21, 2011," but she did not explain how she arrived at that conclusion or inferred Ruiz was the person who electronically signed the 2011 agreement. To be sure, "Ernesto Zamora Ruiz (Electronic Signature)" and "9/21/2011 11:47 AM" appear in print on signature and date lines of the 2011 agreement, and Main apparently retrieved the proffered "true and correct copy" of the 2011 agreement from Moss Bros.'s personnel records. But Main never explained how Ruiz's printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement. More specifically, Main did not explain how she ascertained that the electronic signature on the 2011 agreement was "the act of" Ruiz. (Civ. Code, § 1633.9, subd. (a).)

After Ruiz averred he did not recall electronically signing the 2011 agreement, Main explained in her reply declaration that the 2011 agreement was part of an Employee Acknowledgment form that "is" presented to all Moss Bros. employees as part of a series of changes to the company's employee handbook, and each employee is required to log into the company's HR system, using his or her "unique login ID and password," to review and sign the Employee Acknowledgment form. Again, however, Main did not explain how, or upon what basis, she inferred that the electronic signature on the 2011

11

agreement was "the act of" Ruiz. (Civ. Code, § 1633.9, subd. (a).) This left a critical gap in the evidence supporting the petition.

Indeed, Main did not explain that an electronic signature in the name of "Ernesto Zamora Ruiz" could only have been placed on the 2011 agreement (i.e., on the Employee Acknowledgement form) by a person using Ruiz's "unique login ID and password"; that the date and time printed next to the electronic signature indicated the date and time the electronic signature was made; that all Moss Bros. employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements; and the electronic signature on the 2011 agreement was, therefore, apparently made by Ruiz on September 21, 2011, at 11:47 a.m. Rather than offer this or any other explanation of how she inferred the electronic signature on the 2011 agreement was the act of Ruiz, Main only offered her unsupported assertion that Ruiz was the person who electronically signed the 2011 agreement. In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, "the act of" Ruiz. (Civ. Code, § 1633.9, subd. (a).) For the same reason, the evidence was insufficient to support a finding that the electronic signature was what Moss Bros. claimed it was: the electronic signature of Ruiz. (Evid. Code, § 1400, cl. (a).) This was not a difficult evidentiary burden to meet, but it was not met here.

12

Moss Bros. maintains that if Ruiz "were to have his way, the evidentiary burden of enforcing an electronically signed contract would be so much higher than hand-signed contracts that the practical result would be to disfavor, discourage, and ultimately disapprove of the use of electronic signatures." We disagree. As indicated, the burden of authenticating an electronic signature is not great. (Civ. Code, § 1633.9, subd. (a) [an electronic signature is attributable to a person if it is the act of the person, and this may be shown in any manner]; Evid. Code, § 1400, cl. (a); *People v. Skiles, supra,* 51 Cal.4th at p. 1187 [the means of authenticating a writing are not limited to those specified in the Evidence Code; a writing can be authenticated by circumstantial evidence and by its contents]; *Newton v. American Debt Services, Inc.* (N.D. Cal. 2012) 854 F.Supp.2d 712, 731-732 [electronic signature on arbitration agreement proved to be the plaintiff's signature because it was made using DocuSign, a company used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and National Commerce Act, and the process DocuSign used to verify the plaintiff's electronic signature was explained].)

Relying on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 (*Condee*), Moss Bros. argues it was not required to authenticate Ruiz's electronic signature on the 2011 agreement in order to meet its burden of proving by a preponderance of the evidence that the 2011 agreement between itself and Ruiz existed. (§ 1281.2 [court shall order parties to arbitration "if it determines that an agreement to arbitrate the controversy exists"]; *Engalla v. Permanente Medical Group, Inc., supra,* 15

13

Cal.4th at p. 972 [on petition to compel arbitration, trial court is required to weigh the evidence and determine whether valid arbitration agreement exists]; *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413 [same].) Moss Bros.'s reliance on *Condee* is misplaced.

The trial court in *Condee* denied the petition to compel arbitration because the petitioner did not authenticate the opposing party's signature on the proffered arbitration agreement. (*Condee, supra,* 88 Cal.App.4th at p. 218.) Significantly, however, the opposing party *did not challenge* the authenticity of its signature on the agreement. (*Ibid.*) Thus, the appellate court in *Condee* held it was error to deny the petition because the petitioner was not required to "follow the normal procedures of document authentication" in petitioning for arbitration. (*Ibid.*) The court observed that section 1281.2 did not require the petitioner to introduce the arbitration agreement into evidence, and also pointed out that, "[a] plain reading of the statute indicates that *as a preliminary matter* the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee, supra,* at p. 219, italics added.)[8]

---

[8] *Condee* pointed out that former rule 371 of the California Rules of Court (all further references to rules are to the California Rules of Court) bolstered its conclusion because the rule only required the petitioner to "allege the *existence* of an agreement and support the allegation as provided in [former] rule 371," by attaching either a copy of the agreement or its pertinent provisions to the petition. (*Condee, supra,* 88 Cal.App.4th at p. 219.) Former rule 371 provided: "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 shall set forth, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions shall be set forth verbatim or a copy shall be attached to the petition and incorporated by reference."

*[footnote continued on next page]*

14

Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged. (*Condee, supra,* 88 Cal.App.4th at pp. 218-219; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219, fn. 8 [noting that "to the extent *Condee* conflicts with *Rosenthal,* our Supreme Court decision is controlling"].) Though Ruiz did not deny that the electronic signature on the 2011 agreement was his, he claimed he did not recall signing the 2011 agreement and would not have signed it had it been presented to him. In the face of Ruiz's failure to recall signing the 2011 agreement, Moss Bros. had the burden of proving by a preponderance of the evidence that the electronic signature was authentic (Evid. Code, § 1401), that is, it was what Moss Bros. claimed it was: "the act of" Ruiz (Civ. Code, § 1633.9, subd. (a)). Moss Bros. did not meet this evidentiary burden.

B. *Moss Bros. May Not Rely on the March 2010 Arbitration Agreements*

Moss Bros. argues that even if Ruiz did not electronically sign the 2011 agreement, he signed two other arbitration agreements in March 2010, and the petition should have been granted based on the 2010 arbitration agreements. We disagree. Moss Bros. did not adduce the 2010 arbitration agreements in its petition, and did not mention

---

*[footnote continued from previous page]*
Former rule 371 was renumbered rule 3.1330 and amended effective January 1, 2007, to state, without substantive change: "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be attached to the petition and incorporated by reference."

either agreement until it filed its reply papers.  Thus, the 2010 arbitration agreements were not properly presented to the trial court and are not properly before this court.  (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1333 [arguments first raised in reply papers in the trial court are not properly presented to the trial court and are not properly before the appellate court].)

C.  *The Trial Court Properly Considered Ruiz's Late-filed Response Papers*

Lastly, Moss Bros. claims the factual allegations of its petition, including that Ruiz electronically signed the 2011 agreement, must be deemed admitted because Ruiz's response was untimely served and filed.  We disagree.

Moss Bros. points to section 1290, which provides that "[t]he allegations of a petition are deemed to be admitted by a respondent duly served therewith unless a response is duly served and filed," and section 1290.6, which provides that "[a] response shall be served and filed within 10 days after service of the petition . . . ."  But section 1290.6 also states that "[t]he time provided in this section for serving and filing a response may be extended . . . for good cause, by order of the court."

Courts have long acknowledged that the trial court may consider untimely filed and served response papers, when no prejudice to the petitioner is shown, without an order extending the 10-day time period of section 1290.6.  (See, e.g., *MJM, Inc. v. Tootoo* (1985) 173 Cal.App.3d 598, 603 ["In the absence of any showing of prejudice to appellant, the trial court was well within its prerogative to evaluate credibility and consider the responses as timely under section 1290.6."]; *Atlas Plastering, Inc. v.*

16

*Superior Court* (1977) 72 Cal.App.3d 63, 68 ["The responses . . . were both served and filed beyond the 10-day period required by Code of Civil Procedure section 1290.6, and no extensions of time were granted or stipulations entered.  However, there is no indication that the respondent court here did not treat the responses as timely."]; *Travelers Indemnity Co. v. Bell* (1963) 213 Cal.App.2d 541, 544-545 ["We first dispose of respondent's contention that in the superior court appellant's response or answer to its petition for order vacating award was not filed within the statutory time (Code Civ. Proc., § 1290.6) and should be disregarded . . . . [T]here is nothing in the record to indicate that the lower court did not, nevertheless, treat it as timely filed . . . [and] no prejudice has resulted herein to respondent . . . ."].)

At the hearing on the petition, counsel for Ruiz offered good cause for the court to consider Ruiz's opposition papers even though they were untimely filed and served. (§ 1290.6.)  Counsel explained the opposition papers were untimely because his law firm treated the petition as a motion rather than a petition.  (See § 1290.2 [petition to compel arbitration "shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions . . . ."].)  The petition was filed and served on August 13, 2012, and under section 1290.6, Ruiz had until August 28 to file and serve his response, or opposition.  (§ 1013 [five days added for service by mail in California].)  The response was filed and served on September 20, 2012, nine court days before the October 3 hearing.  This was permissible if the petition could be treated as a motion. (§ 1005, subd. (b) [opposition to motion to be filed nine court days before hearing].)

Additionally, Moss Bros. filed its supplemental reply declaration of Main and its other reply papers five days before the October 3 hearing.  This was consistent with treating the petition as a motion.  Though the California Arbitration Act (§ 1281 et seq.) does not contemplate the filing and service of reply papers, under section 1005, subdivision (b), a reply to an opposition to a motion must be filed and served at least five court days before the hearing on the motion.  Moss Bros. implicitly relied on section 1005, subdivision (b) as authority for filing its reply papers, and the reply papers avoided any prejudice to Moss Bros. due to Ruiz's late-filed and served response papers.

## IV.  DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Ruiz shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION

KING _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

CODRINGTON _____
J.

18