Filed 12/13/24  Gonzales v. P.T. Automotive CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT GONZALES, Plaintiff and Appellant, v. P.T. AUTOMOTIVE, LLC, Defendant and Respondent. | B331659 (Los Angeles County Super. Ct. No. 21STCV18975) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Doumanian & Associates, Nancy P. Doumanian; The Arkin Law Firm and Sharon J. Arkin, for Plaintiff and Appellant.

Fisher & Phillips, Nicole Golob and Danielle S. Zobel, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff Robert Gonzales appeals from a judgment after the trial court confirmed an arbitration award in favor of defendant P.T. Automotive, LLC.[1] Plaintiff contends the trial court erred by granting defendant's motion to compel arbitration because there was no substantial evidence that plaintiff had agreed to arbitrate his claims, and, alternatively, the arbitration agreements were unenforceable as unconscionable. We affirm.

# II. BACKGROUND

A. *The Complaint*

Plaintiff began working at Penske Toyota of Downey (Penske Toyota) in 1993 and had been employed by defendant for 32 years. Plaintiff alleged that after he experienced a number of heart attacks, he was subjected to harassment, discrimination, and retaliation based on his medical conditions, age, and physical disabilities.

On May 19, 2021, plaintiff sued defendant for employment-related claims pursuant to the Fair Employment and Housing Act under Government Code sections 12900 and 12940, and whistleblower retaliation under Labor Code section 1102.5. On

---

[1] Plaintiff initially sued RP Automotive, Inc. and Penske Toyota of Downey as defendants. RP Automotive, Inc. is an owner of P.T. Automotive, LLC, which operates Penske Toyota of Downey. The parties stipulated that P.T. Automotive was plaintiff's employer at all times referenced in the complaint, and that the answer and motion to compel arbitration filed by RP Automotive were deemed filed by P.T. Automotive.

July 12, 2021, defendant filed an answer, asserting as an affirmative defense that plaintiff agreed to arbitrate his claims.

B.     *Motion to Compel Arbitration*

On September 28, 2021, defendant moved to compel arbitration based on plaintiff's execution of two arbitration agreements, one in 2007 and the other in 2020.  We will focus our discussion on the 2020 agreement.

The 2020 agreement, entitled Employment At-Will and Arbitration Agreement[2], defined the "Company" as "PT Automotive, LLC dba Penske Toyota of Downey."  (Boldface omitted.)  Paragraph 2 provided:  "I and the Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment.  I and the Company each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law and to have a trial by jury.  Both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, employees, or agents), or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ('FAA'), in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.05 and all of the Act's other mandatory

---

[2]     The title appears twice as the first two lines of the agreement.  The text of the title in the first line is in a large font and bolded.  The text of the title in the second line is in all caps and also in a large font.

3

and permissive rights to discovery). Included within the scope of this Agreement are all disputes, whether based on tort, negligence, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise."[3]

The second page described the signature provision: "MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT." (Boldface omitted.) The 2020 agreement had an electronic signature section with a checkmark next to the sentence "[b]y entering my password below, I confirm that I have read, understand, and agree to this document." The subsection entitled "Password" indicated it was signed by "Robert Gonzales" on January 9, 2020, at 4:15 p.m.

In support of its motion, defendant submitted a declaration from Bonnie Schumacher, the human resources director for "the Penske dealership that operates as Penske Toyota of Downey." Regarding the corporate structure of defendant, Schumacher declared that RP Automotive owned P.T. Automotive, and P.T. Automotive was the entity that operated Penske Toyota. Schumacher explained that based on her position, she was: "familiar with the dealership operating as Penske, its

---

[3]    Plaintiff does not dispute that his claims are within the scope of the arbitration agreement.

4

employment policies, and the employment forms it uses." She also declared: "I am also familiar with Penske's operations and corporate structure, as well as its operations including, but not limited to, sales, repairs, and maintenance. In my role as Human Resources Manager, I oversee human resources operations at Penske. I have reviewed the personnel file and records for the Plaintiff in this matter, Robert Gonzales."[4]

Schumacher then described how employees electronically signed documents: "To electronically access, acknowledge policies, and sign documents employees receive a unique username and temporary password to use in 'Compligo,' a third-party human resources computer-based platform. An employee's username is his or her employee ID number. The first time an employee logs in to Compligo, he will be required to create a new and unique personal password. P.T. Automotive, LLC does not have access to employees' unique passwords. In the event that an employee needs access restored to his account, system administrators will issue the employee a temporary password that the employee must change once he logs back in to Compligo. Employment-related documents, including the [2020 agreement], are sent to employees' Compligo inboxes on an annual basis for employees to review and acknowledge. Employees' passwords function as their electronic signature acknowledging the documents they have received and reviewed. To sign [the 2020

---

[4]    Plaintiff objected to the entirety of this paragraph of Schumacher's declaration, on the grounds that, as a human resources officer, Schumacher had "no knowledge of the corporate structure or set up of the defendant automative dealership." The trial court overruled the objection, and plaintiff does not challenge that ruling on appeal.

agreement], an employee must scroll to the signature block located at the bottom of the document. Above the signature block, there is an acknowledgement stating that by entering his password below, the employee is attesting to the fact that he has read, understood, and agreed to be bound by the [2020 agreement]'s terms. The employee then proceeds to place his unique personal password in the box within the signature block and then clicks 'submit.' This completes the electronic signature process for documents in Compligo." Schumacher further declared: "I am able to attribute the electronic signature in the [2020 agreement] to Mr. Gonzales because the electronic safety protocols described above mean that Mr. Gonzales[ ] electronically signed the [2020 agreement] by inserting his unique personal password in the signature box at the bottom of the [2020 agreement]."

Plaintiff opposed defendant's motion to compel arbitration and argued, among other things, that the arbitration agreement was unconscionable and defendant failed to present competent evidence regarding the circumstances under which plaintiff purported to sign the arbitration agreement.[5] Plaintiff submitted his declaration in support. Regarding the 2020 agreement, plaintiff declared that he did not "recall seeing or reviewing this agreement" and that "I was never given this agreement alone to review, read, consider, and then signed [*sic*]. No one at the dealership ever explained this document to me or explained that

---

[5]     Plaintiff also argued below that he never entered into an arbitration agreement with RP Automotive. As noted, the parties subsequently stipulated that P.T. Automotive was his employer, and that the answer and motion to compel arbitration were deemed filed by P.T. Automotive.

the consequence of the document was that I was giving up my right to have this dispute heard in a courtroom before a jury. I felt forced to sign this document and was never given any meaningful choice or the ability to refuse to sign it." Plaintiff also objected to Schumacher's declaration, arguing that it lacked foundation.

On October 27, 2021, the trial court granted the motion to compel arbitration. The court concluded that plaintiff had entered into an arbitration agreement with defendant, citing the 2020 agreement. The court found that plaintiff electronically signed the agreement, which was not procedurally unconscionable, and failed to present evidence that he was pressured to sign the agreement, denied sufficient time to review the document, or denied the opportunity to decline the arbitration provision. The court also concluded the agreement was not substantively unconscionable.

C.    *Confirmation of Arbitration Award*

On October 12, 2022, the arbitrator found in favor of defendant on plaintiff's claims.

On April 7, 2023, the defendant petitioned to confirm the arbitration award.

On July 6, 2023, the trial court granted the petition and confirmed the award. On July 31, 2023, the court entered judgment. Plaintiff timely appealed.

# III. DISCUSSION

## A. *Standard of Review*

"There is no uniform standard of review for evaluating a trial court's order granting or denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, we adopt a substantial evidence standard. [Citation.] If the court's ruling rests solely on a decision of law or on undisputed facts, we apply a de novo standard of review. [Citation.]" (*Herzog v. Superior Court* (2024) 101 Cal.App.5th 1280, 1294.) Defendant, "as the party seeking arbitration, bears the burden of proving the existence of an arbitration agreement." (*Ibid.*) To the extent plaintiff challenges the trial court's evidentiary rulings, we apply the abuse of discretion standard of review. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.)

## B. *Existence of Arbitration Agreement*

Plaintiff contends there was insufficient evidence that he agreed to arbitrate his claims because Schumacher's declaration "was evidentiarily defective and insufficient to foundationalize and authenticate the arbitration agreements . . . ."

According to plaintiff, Schumacher, as the human resources manager for *Penske Toyota*, did not have sufficient knowledge of plaintiff's employment records with *P.T. Automotive*. We disagree. Plaintiff does not dispute that he worked at Penske Toyota, and Schumacher declared that P.T. Automotive operated Penske Toyota. Moreover, Schumacher declared that she was familiar with "Penske's operations and corporate structure" and

8

its employment policies and forms, and had reviewed plaintiff's personnel file and records. Thus, substantial evidence supports a finding that Schumacher had personal knowledge about the circumstances of plaintiff's employment.

Plaintiff cites *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*) and *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158 (*Gamboa*) in support of his contention that Schumacher's declaration failed to demonstrate that plaintiff signed the 2020 agreement. Both cases are readily distinguishable.

In *Ruiz, supra*, 232 Cal.App.4th 836, the Court of Appeal affirmed the trial court's order denying the employer's motion to compel arbitration based on the employer's failure to present sufficient evidence that the employee electronically signed an arbitration agreement. (*Id.* at p. 838.) The Court of Appeal determined that the declaration from the employer's business manager "summarily asserted" that the employee had electronically signed the agreement, but failed to explain "that an electronic signature in the name of [the employee] could only have been placed on the . . . agreement . . . by a person using [the employee's] 'unique login ID and password'; . . . that all . . . employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements; and the electronic signature on the 2011 agreement was, therefore, apparently made by [the employee] on [the date and time]." (*Id.* at pp. 843–844.) Moreover, "[the employee] averred he did not recall electronically signing the . . . agreement . . . ." (*Id.* at p. 844.)

In *Gamboa, supra*, 72 Cal.App.5th 158, the Court of Appeal also affirmed an order denying the employer's motion to compel

arbitration based on the employer's failure to demonstrate the existence of a contract. (*Id*. at p. 168.) The employer had submitted a declaration from its human resources director asserting that the plaintiff was employed by the employer, had signed the arbitration agreement, and the agreement was in effect during the plaintiff's employment. (*Id*. at p. 169.) The human resources director, however, "did not provide the requisite preliminary facts to show she had personal knowledge about what she said in those paragraphs." (*Ibid*.)

Here, Schumacher explained that an electronic signature could only be placed on the 2020 agreement after someone with plaintiff's unique login ID and password (unknown to defendant) logged onto the Compligo system, scrolled to the bottom of the document, placed the password within the signature block, and then clicked "'submit.'" Moreover, plaintiff conceded signing the 2020 agreement. Thus, there was substantial evidence to support a finding that the electronic signature on the 2020 agreement was "the act of" plaintiff. (See Civ. Code, § 1633.9, subd. (a).) Accordingly, we find substantial evidence supports the trial court's finding that plaintiff signed the 2020 agreement to arbitrate his employment claims against defendant.

C.    *Unconscionability*

Plaintiff next argues that the 2020 agreement was both procedurally and substantively unconscionable and the trial court therefore should have deemed the agreement unenforceable.

10

1. <u>Legal Standard</u>

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement. [Citations.] The California Arbitration Act [citation] expresses a ""strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution."" [Citations.] A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' [Citation.] Unconscionability provides such grounds. [Citation.] "The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and a substantive element. [Citation.] The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability. [Citation.]" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)

2. <u>Analysis</u>

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.] This element is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere

11

to the contract or reject it.' [Citation.] Adhesion contracts are subject to scrutiny because they are 'not the result of freedom or equality of bargaining.' [Citation.] However, they remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." (*Ramirez, supra*, 16 Cal.5th at pp. 492–493.)

The parties do not dispute that the arbitration agreement here was an adhesion contract. Our Supreme Court "previously explained that there are "'degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' [Citation.]'" [Citations.] Courts 'must be "particularly attuned" to this danger in the employment setting, where "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute."' [Citations.] Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Ramirez, supra*, 16 Cal.5th at pp. 493–494.)

"'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type

12

of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126–127 (*Kho*).)  The 2020 agreement was one and a half pages long, consisting of five paragraphs, four of which concerned arbitration.  Plaintiff did not present evidence that he requested additional time to review the agreement, or that he was denied such a request.  Indeed, although plaintiff declared that he "felt forced to" sign the 2020 agreement, he did not describe the circumstances under which he signed that agreement.  Schumacher declared that the employment and arbitration agreements were e-mailed annually to each employee for review and signature, and there was no evidence that plaintiff was subject to any time limitations for signing the 2020 agreement.  Accordingly, the evidence here does not support a finding of significant oppression.  (Cf. *id.* at p. 127 [affirming finding of oppression because agreement presented to employee at workplace, piece-rate compensation system meant that any time spent reviewing agreement would reduce pay, porter who brought the document waited for employee to sign, and no indication porter could answer any questions or explain agreement's terms].)

Nor does the record support a finding of surprise or "sharp practices."  While the 2020 agreement's font size appears to be 9 point, the final paragraph, which preceded the signature, stated in bold, capitalized font that, by signing the 2020 agreement, plaintiff agreed to arbitrate any and all disputes arising from his employment.  And, the title of the 2020 agreement is in larger

13

font and entitled "Employment At-Will and Arbitration Agreement." Thus, we conclude the 2020 agreement included only a modest degree of procedural unconscionability.

We next consider whether the record demonstrated a high degree of substantive unconscionability. "Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation] focusing on whether the contract will create unfair or one-sided results [citation]. Substantively unconscionable contractual clauses 'reallocate risks in an objectively unreasonable or unexpected manner.' [Citations.] [¶] Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] '[W]hether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.' [Citation.]" (*Ramirez, supra*, 16 Cal.5th at p. 493.)

Because each party waived its rights to bring claims arising out of plaintiff's employment in a court of law, the arbitration agreement had a ""modicum of bilaterality."" (*Ramirez, supra*, 16 Cal.5th at p. 495.) Moreover, the 2020 agreement stated that "[a]ll rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and

14

judgment under Code of Civil Procedure [s]ection 631.8 shall apply and be observed. . . . Resolution of all disputes shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of 'just cause') other than such controlling law." Thus, the features of dispute resolution adopted under the 2020 agreement were substantively similar to those available in a court of law. (See *Kho, supra*, 8 Cal.5th at p. 130 ["a substantive unconscionability analysis is sensitive to 'the context of the rights and remedies that otherwise would have been available to the parties'"].) On this record, plaintiff has failed to demonstrate that the trial court erred in finding that the arbitration agreement was not unconscionable.

## IV.   DISPOSITION

The judgment is affirmed.  Pursuant to Government Code section 12965, subdivision (c)(6), no costs are awarded to defendant.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

16