Filed 6/2/26  Strait v. Compass Group USA CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LISA SUNNY STRAIT,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>COMPASS GROUP USA, INC. et al.,<br><br>    Defendants and Appellants. | 2d Civ. No. B346819<br>(Super. Ct. No.<br>2024CUWT025279)<br>(Ventura County) |

Compass Group USA, Inc., Bon Appétit Management Company Foundation, Bon Appétit Management Co. (BAMCO), Richard Maxwell, and Logan De'Bone, collectively appellants, appeal from the denial of their motion to compel arbitration.

The trial court found appellants failed to establish that respondent Lisa Sunny Strait electronically signed an arbitration agreement when BAMCO hired her.  Because appellants failed to carry their burden of proof and the court did not abuse its discretion in declining an evidentiary hearing, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

BAMCO is a wholly owned subsidiary of Compass Group USA, Inc. and provides food-service management in thirty-two states. Strait applied for a position with BAMCO on August 17, 2022.

BAMCO requires new hires to use "PeopleHub," a secure online portal, to complete "onboarding" documents including an arbitration agreement. Under that system, each applicant creates a unique username and password and must re-enter that password before electronically signing any document. BAMCO cannot access the employee's username or password once the account is created, according to BAMCO's Operations Manager, Sandy Bailey. The system maintains an audit log of every user action with precise timestamps and generates a signed portable document format (PDF) document upon execution. According to Bailey, Strait received a unique onboarding hyperlink on August 30, 2022, at 8:50 a.m., and the audit log reflects that she electronically signed the arbitration agreement at 10:03 a.m. that morning.

Strait claims never to have signed the arbitration agreement. She declares that her supervisor, Richard Maxwell, provided her with login credentials that did not work, then called her into his office. Maxwell logged in and completed the onboarding paperwork while Strait sat in his office. Maxwell told her the documents would be provided to her later. They never were. Strait said she had no opportunity to see or review the arbitration agreement.

Maxwell acknowledged that he "sat down with [Strait] in [his] office to complete her onboarding," something he does "with many new hires." He asserted in general terms that he did not

2

execute any documents on Strait's behalf. Maxwell did not claim that Strait operated the computer during that session or that she entered her credentials and electronically signed the arbitration agreement. Appellants did not produce any evidence identifying the device or internet protocol (IP) address used to execute the onboarding documents.

The trial court denied the motion to compel arbitration. It found that the documents were executed in Maxwell's office on his computer, which "raises the possibility that someone other than Plaintiff executed the documents, even though Plaintiff's login credentials had been used." The court further noted that appellants had not identified the IP address of the computer used or provided evidence the agreement was ever sent to Strait. The court denied appellants' request for an evidentiary hearing, finding they had "not proffered sufficient evidence to establish a sharply conflicting factual account" and that a hearing "would not serve to resolve a disparity between the accounts but would permit supplementation of evidence of the moving party's version."

## DISCUSSION

### I. Standard of Review

Appellants argue they carried their burden of establishing, by a preponderance of the evidence, that Strait signed the arbitration agreement. They also contend that, at the very least, the trial court should have held an evidentiary hearing instead of deciding the issue on the papers. We review those two arguments under different standards of review.

We review the trial court's ruling that appellants failed to carry their burden of proving Strait signed the agreement only to determine whether appellants' evidence was " ' " '(1)

3

"uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ' " (*Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 52 (*Garcia*); *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166 (*Gamboa*).) As *Gamboa* recognizes, it is " ' " 'almost impossible' " ' " for the party bearing the burden of proof to obtain reversal of a contrary finding. (*Gamboa,* at p. 166.)

We review the trial court's denial of an evidentiary hearing for abuse of discretion. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 414 (*Rosenthal*).)

## II. Appellants failed to establish Strait executed the arbitration agreement

An electronic signature may authenticate a contract if the proponent establishes, by a preponderance of the evidence, security procedures linking the signature to the signatory. (Civ. Code, § 1633.9, subd. (a); *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844 (*Ruiz*).) A bare representation that the document bears the employee's signature is insufficient. (*Id*. at p. 843.) The proponent must show that the signature was affixed through the act of the employee and, critically, that it could only have been affixed by the employee. (*Garcia, supra,* 102 Cal.App.5th at p. 53; *Ruiz, supra,* 232 Cal.App.4th at p. 844.)

Appellants described PeopleHub's security procedures in detail, including the requirements for unique credentials, password re-entry before signing, audit logs, and the employer's inability to access employee accounts.

Appellants did not, however, refute Strait's declaration that she did not enter those credentials on August 30, 2022, in

4

Maxwell's office.  Strait declared the login credentials Maxwell provided to her did not work, Maxwell then requested she come to his office to complete the application, and he signed the documents for her on his own computer while she stood nearby. Strait declared that she did not sign the arbitration agreement.

In his declaration, Maxwell confirms that he sat with Strait in his office to complete her onboarding.  He says nothing, however, about how his computer was used to access Strait's employee portal to review and sign the documents.  Maxwell does not state whether Strait entered her own login credentials or whether she provided her credentials to him and authorized him to use them.  He does not explain who operated the computer or navigated through the documents when Strait was in his office. And he says nothing about witnessing Strait sign the arbitration agreement in his office.

Maxwell asserts that he reviewed with Strait "all onboarding policies she signed, including the Company's Arbitration Agreement."  He does not, however, refute Strait's assertion that she could not access the portal and that he completed the onboarding for her on his own computer while she stood nearby.  Nor does he claim she ever authorized him to sign on her behalf. In other words, he does not explain how he had personal knowledge that Strait signed the arbitration agreement.

Appellants argue that Strait's credentials were created on August 17, 2022, before any contact with Maxwell, which establishes that Strait and only Strait could have created the account.  While that may be true, the question is not who created the account.  It is who used the account to sign the arbitration agreement on August 30, 2022.

5

Appellants argued at the hearing that other documents Strait completed at the same time, required personal information only she could supply. They claimed this confirms she was actively participating in the process. But counsel did not support this argument with admissible evidence in a sworn declaration. Appellants' evidence does not meet Strait's sworn account that Maxwell completed everything.

The absence of device-identifying evidence is also significant. Appellants did not offer any evidence of the IP address or device from which the alleged arbitration agreement was executed despite having access to PeopleHub's audit logs, which Bailey described as recording "every user action." They chose not to submit any such device-identifying data. The trial court cited this omission as one basis for its ruling. We agree it is a meaningful gap in appellants' evidence.

The evidentiary gap is not limited to device-identifying data. PeopleHub generates a signed PDF upon execution, but appellants submitted no evidence that any such PDF was delivered to Strait's email address or otherwise provided to her. Strait declared she never received any onboarding documents and was never afforded an opportunity to review the arbitration agreement.

If Strait had personally navigated through PeopleHub and executed the agreement, the natural expectation, consistent with Bailey's description of the system, is that she would have received a copy. Appellants' failure to produce any evidence of transmission is therefore consistent with Strait's account that she was not present at the keyboard and did not personally complete the process.

Appellants failed to produce evidence establishing that it was Strait, and only Strait, who could have placed the electronic signature on the document, as *Garcia* and *Ruiz* require. (*Garcia, supra*, 102 Cal.App.5th at p. 53; *Ruiz, supra*, 232 Cal.App.4th at p. 844.) The trial court's finding that appellants failed to carry their burden is amply supported by the record.

Further, Strait's declaration directly contradicted the inference appellants sought to draw from the audit log, and Maxwell's admissions corroborated her account of the physical setting. Because appellants' evidence was therefore neither uncontradicted nor unimpeached, the *Garcia/Gamboa* standard forecloses reversal. (See *Garcia, supra*, 102 Cal.App.5th at p. 52; *Gamboa, supra*, 72 Cal.App.5th at p. 166.)

### III. *The trial court did not abuse its discretion in declining to hold an evidentiary hearing*

Appellants assert they were entitled to an evidentiary hearing as a matter of law. They were not.

A trial court may – but is not required to – hold an evidentiary hearing on a petition to compel arbitration. (*Rosenthal, supra*, 14 Cal.4th at p. 414; accord *Garcia, supra*, 102 Cal.App.5th at p. 54.) Oral testimony is the "better course" when enforceability turns on "sharply conflicting factual accounts," but "there is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Rosenthal,* at p. 414.)

Here, the trial court found that appellants had "not proffered sufficient evidence to establish a sharply conflicting factual account" and that a hearing "would not serve to resolve a disparity between the accounts but would permit

7

supplementation of evidence of the moving party's version." We agree.

Appellants characterize the dispute as a credibility contest between Strait's declaration and those of Bailey and Maxwell. Bailey, however, was not present during Strait's onboarding and would not have been able to refute Strait's account in an evidentiary hearing. (See *Garcia*, *supra*, 102 Cal.App.5th at p. 52.) Maxwell's declaration does not refute the core of Strait's account. He agrees that he was present in his office with Strait to complete her onboarding, but he does not explain the specifics or even assert that he witnessed Strait sign the arbitration agreement. Maxwell's assertion that he does not execute documents for employees, and did not do so for Strait, does not deal with the specifics in Strait's declaration.

The trial court did not abuse its discretion in finding that live testimony restating Maxwell's general denials would not have resolved the central issue about who operated the computer in his office that morning to electronically sign the arbitration agreement.

Appellants' reliance on *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79 (*Ashburn*) and *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754 (*Hotels Nevada*) is misplaced. In *Ashburn*, the trial court compelled arbitration without holding a hearing and without meaningfully engaging with the evidence; a problem not present here. (*Ashburn*, at pp. 95–98.) In *Hotels Nevada*, the trial court implicitly determined that a hearing was necessary, then denied the motion without holding one. (*Hotels Nevada*, at pp. 758, 763–764.) Neither case supports the proposition that the moving party is entitled to a hearing simply by requesting it.

The trial court here considered the evidence, engaged with the factual dispute, and reasonably concluded a hearing would not resolve it.  That is a permissible exercise of discretion under *Rosenthal*, *supra*, 14 Cal.4th 394 and *Garcia, supra*, 102 Cal.App.5th 41.

## DISPOSITION

The order denying appellants' motion to compel arbitration is affirmed.  Costs are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>

VAN ROOYEN, J.*

We concur:

YEGAN, Acting P. J.

CODY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Fisher & Phillips LLP, Lonnie D. Giamela and Tristy Rashtian for Defendants and Appellants.

Bordin Semmer LLP, Joshua Bordin-Wosk, Benjamin A. Sampson, and Joseline Sanchez Moreno for Plaintiff and Respondent.