Filed 1/13/25  Nieblas v. Beshay Foods CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| MARGARITA NIEBLAS, | D082132 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00030605-CU-OE-CTL) |
| BESHAY FOODS, INC. et al., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Advocates for Worker Rights and Marco A. Palau, Joseph D. Sutton, Eric S. Trabucco; Aiman-Smith & Marcy and Brent A. Robinson, for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and Michael J. O'Connor, Jr., Mae G. Alberto for Defendant and Respondent.

Plaintiff and appellant Margarita "Berenice" Nieblas filed a class action complaint against respondent Beshay Foods Inc., et al. (Beshay Foods) alleging various Labor Code[1] violations. Beshay Foods petitioned to compel arbitration, which Nieblas opposed. The court granted the petition.

Nieblas contends the court abused its discretion by failing to hear oral testimony regarding the parties' conflicting declarations in order to weigh witness credibility and decide whether she electronically signed the arbitration agreement. She therefore requests that we reverse and remand the matter for the court to hold such a hearing and to permit her to conduct appropriate discovery.

Beshay Foods contends the court's order is not appealable and therefore we should dismiss this appeal. It also argues the court did not abuse its discretion by declining to hear oral testimony. We conclude the order is appealable and affirm it.

FACTUAL AND PROCEDURAL BACKGROUND

*Nieblas's Complaint*

In August 2022, Nieblas alleged seven violations of the Labor Code, wage orders and the Unfair Competition Law in her complaint against Beshay Foods, which owned and operated a restaurant where she worked.[2]

---

[1] Undesignated statutory references are to the Labor Code.

[2] Nieblas's claims were for unpaid minimum wages (§ 1194); unpaid overtime (§ 510); failure to provide meal periods (§§ 226.7, 512, subd. (a)); failure to authorize and permit rest periods (§ 226.7); waiting time penalties (§ 203); failure to provide compliant wage statements or maintain payroll records (§ 226); and violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

*Beshay Foods's Petition to Compel Arbitration*

In its petition to compel arbitration, Beshay Foods submitted declarations by its district manager, Pablo Vargas.[3] He stated in a first declaration that he oversaw various aspects of the onboarding process and training of new hires. Vargas stated: "Throughout my employment with [Beshay Foods], the onboarding process for all employees has been, and continues to be, conducted electronically. This means all documents that employees review and sign during the onboarding process are presented, reviewed, and signed by employees electronically. In order to access the electronic onboarding software, employees are required to log in using their own unique username and password. [¶] Throughout my employment with [Beshay Foods], it has been [its] practice to separately explain each of the forms which the employees are reviewing/executing during the onboarding process, explain that it is important that they read and understand the documents, and explain how to electronically sign the forms. With respect to its Arbitration Agreement, [Beshay Foods's] standard practice is to inform the employees of the agreement, that they are to carefully review the agreement prior to signing, and that have the right [*sic*] to take it to an attorney for review prior to signing, if they so desire. [Beshay Foods] does so to ensure all employees understand what they are being asked to sign."

Vargas declared that in April 2017, when Beshay Foods took over the operation of the restaurant that employed Nieblas, he recalled meeting with Nieblas: "As part of this onboarding process, two computer terminals were set up in the dining room of the restaurant. [The restaurant manager] and I

---

[3]    Beshay Foods also submitted a declaration by Crystal Sainz, its human resources director, who explained that Beshay Foods is a franchisee of the restaurant where Nieblas was employed. She also stated Beshay Foods conducts numerous interstate commercial transactions.

assisted each new-hire in completing the necessary forms and I specifically recall assisting [ ] Nieblas to review and sign her onboarding documents[.]" Vargas provided Nieblas with a unique username and password on a piece of paper, telling her not to share it with anyone. He did not give anybody else her username or password. He instructed her how to log into the company's onboarding program. Vargas also stated Nieblas electronically signed a W-4 form, an immigration form, and an employee withholding certificate.

Vargas submitted an arbitration agreement that he claims Nieblas electronically signed. Its cover page bears the unique username "BerNieblas," states her name is "Berenice Nieblas," and specifies the time it was electronically signed on April 5, 2017.

The arbitration agreement's opening paragraph states: "In consideration of Employee's employment or continued employment, the parties agree as follows . . . ." The agreement states it is "the sole and exclusive method of resolving disputes between the parties," (underlining omitted) and applies to "any and all claims" between the employer and employee, including "all claims arising from or relating to [e]mployee's recruitment, hiring, and employment, [and] the termination of that employment[.]" The agreement includes a class action waiver provision.[4]

---

[4] That provision states: "The parties agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or representative . . . basis. There will be no right or authority in arbitration for any dispute to be brought, heard, or arbitrated as a class, or for either party to be a participant in any purported class, including without limitation pending but not certified class actions. This class action waiver is severable from this agreement if a civil court of competent jurisdiction finds this class action waiver is unenforceable, unconscionable, void, or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction." (One capitalization omitted.)

*Nieblas's Opposition to the Petition*

In opposing the petition, Nieblas argued Beshay Foods had failed to meet its burden to establish that she signed the arbitration agreement: "The security procedures that [Beshay Foods] applied—having the manager obtain credentials for [Nieblas] and allegedly share them on a piece of paper—were not adequate or effective to authenticate [her] signature. [Beshay Foods's] security procedures do not ensure that the credentials were used by [Nieblas] and *no-one* else."

Nieblas also argued there was fraud in the execution: "Plaintiff denies signing the arbitration agreement and testifies that the electronic signature appearing on the arbitration agreement was not [her act]. During the onboarding meeting, no mention of an arbitration agreement was made, [she] was not given and did not see an arbitration agreement on any computer device or on paper. She had no knowledge of an arbitration agreement. During the onboarding meeting, she simply provided basic personal information like her address and phone number to [ ] Vargas as he requested it. [ ] Vargas then entered this information on his laptop. She does not know precisely what forms or documents [ ] Vargas was completing on his laptop with information obtained by [her]. She just generally understood that she was meeting [ ] Vargas to become formally hired by [Beshay Foods]. The electronic signature on the arbitration agreement was placed without [her] knowledge, consent, or authorization."

Nieblas argued the arbitration agreement was procedurally and substantively unconscionable. In her memorandum of points and authorities, Nieblas argued that if the court found disputed facts, it should hold an evidentiary hearing: "Defendants have failed to show by a preponderance of the evidence that an arbitration agreement exists. As such, their motion to

5

compel arbitration should be denied. However, should the court conclude that there are disputed factual issues that cannot be resolved without additional evidence, [Nieblas] requests that the court permit discovery and submission of additional evidence. The court may also hold an evidentiary hearing." (Some capitalization omitted.)

Nieblas submitted a declaration stating she is Spanish-speaking and does not read or speak English. She remembered meeting Vargas at the restaurant when she was formally hired: "During this meeting, [ ] Vargas had a laptop computer in front of him. He was not sharing his screen, nor could I see it. I remember [him] asking me for certain information like my address and phone number. It appeared to me that he took the information I gave him and entered it into his computer, because he was typing. He only asked for this basic information and I would provide it. He did not talk about any arbitration agreement that I had to review and sign. [ ] Vargas simply typed on the computer while I was just sitting and waiting for him to ask me for any piece of information. [¶] . . . [He] did not provide or show me any forms or documents, either on paper or on the computer. He did not provide or show me an arbitration agreement, either on paper or on the computer. He did not say I could ask questions about any documents or that I could consult with a lawyer. He just typed and asked me to provide basic information like my address, phone number, etc. But most of the time, I was just sitting across from him watching [him] type on his computer and waiting for him to ask me for any piece of information. I recall the entire meeting with [him] lasted maybe 20 minutes."

Nieblas denied several of Vargas's statements in his declaration. "I never touched a computer for the purpose of filling out or signing any hiring paperwork or an arbitration agreement. . . . Vargas did not give me a

6

username and password and did not provide me instructions on how to log onto a computer program using any username or password." She added: "I did not use a computer at all during the meeting with [ ] Vargas on April 5, 2017. [He] did not give me a username or password during the meeting and did not tell me that the username and password were unique to me and should not be shared with anyone, nor did he did he help me [*sic*] review and sign documents on his computer."

*Beshay Foods's Reply*

Beshay Foods argued in reply that Nieblas had signed the arbitration agreement, there was no fraud in the execution, and the agreement was not unconscionable. It relied on a second declaration by Vargas: "I have personally onboarded over 100 employees over the last 6 years during my employment with [Beshay Foods]. I always provide employees with their own unique username and password before they begin their onboarding process, because they need this information in order to log into [its] onboarding software in the first place, and to begin completing their onboarding paperwork."

Vargas explained how he assisted Nieblas to complete the onboarding, and how she signed the arbitration agreement: "Before she began her onboarding, I explained to [ ] Nieblas . . . what types of documents she would see, and I explained which documents needed to be completed in order for her to remain employed by [Beshay Foods]. I specifically recall explaining to [ ] Nieblas during this meeting that she needed to sign an arbitration agreement in order to work for [Beshay Foods] and I explained arbitration to her as part of that. [¶] When [ ] Nieblas initially sat down at the table with me, the laptop on the table was facing me. Once I opened up the onboarding program on the laptop, I then turned the laptop so that it was between us on the table

and the screen was visible to both [of us] so she could log in with her unique information and start her onboarding process."

Vargas added, "Once [ ] Nieblas hit the continue button after entering her log in information, the onboarding documents began to populate on the screen. When a new document popped up, I explained to [her] what each document was, addressed any questions she had related to her completing each document, and, if necessary, what parts of or remaining information she needed to enter in order to complete the document. [¶] . . . Throughout the onboarding process, [ ] Nieblas used her finger on the laptop's touch screen to answer 'Yes/No' questions, as well as to scroll up and down on the documents to review and complete them. She also used her finger on the laptop's touchscreen to click the continue button for each of the documents she completed. Occasionally, [she] would ask for help with regard to what information she needed to fill in on various documents, so I helped her with that, by either showing her, explaining it further, and/or helping her type the information she desired for her review and completion. For example, I explicitly remember telling [her] that in order to complete the onboarding documents, [Beshay Foods] needed her to input her telephone number, home address, full legal name, and her social security number in various documents. [She] told me that she needed help typing some of this information into the information boxes on the electronic documents, so I helped her with doing so, in part. Each time I helped input any part of the required information into the documents, as requested and then provided by [ ] Nieblas, I always showed her what information I had just input at her request, and asked her if the information was correct. I then told [her] that if the information was correct, she could continue, and then ultimately confirm her completion and acceptance by clicking the continue button using her

8

finger on the laptop's touchscreen. I witnessed [ ] Nieblas click the continue button on her arbitration agreement."

Vargas stated, "I have **never** clicked through the onboarding screen for an employee to either finalize a document, or to move to, and bring up, the next document for their personal review. I always allow the employees to click through the screens on their own, at their own pace." He reiterated he "did not click the continue button on *any* of the onboarding documents for [ ] Nieblas."

*The Court's Ruling*

Observing it was "presented with two competing declarations," the court ruled that "the claims in this lawsuit fall within the scope of the arbitration agreement." It added: "While this motion presents two declarations with opposite conclusions, the Court concludes that [Beshay Foods] has shown by a preponderance of the evidence that [Nieblas] electronically signed the agreement. Vargas['s] declaration in Reply provides significant detail of both how [ ] Vargas handles all onboarding for [Beshay Foods] as well as specific recollection of his interaction with [ ] Nieblas. The evidence also demonstrates that [Nieblas] could not have completed the onboarding process without agreeing to arbitration."

The court concluded there was no fraud in the execution based on Nieblas's claim she spoke only Spanish and the arbitration agreement is written in English, as Nieblas did not allege actual fraud or any material misrepresentation during the onboarding process, and no evidence showed she requested a Spanish version of the arbitration agreement. It also ruled

9

the arbitration agreement was not procedurally or substantively unconscionable.[5]

The court dismissed the class action claims and ruled: "This action is compelled to arbitration. The court stays the action for a period of 120 days for [Nieblas] to proceed with arbitration of the claims." (Some capitalization omitted.)

*Nieblas's Proposed Settled Statement*

The oral proceedings on Beshay Foods's petition were not recorded. After the court issued its tentative ruling, Nieblas requested a settled statement, arguing it should establish that "[t]he accounts by the declarants are directly in conflict. The motion to compel thus turns largely on credibility determinations of the declarants." She specified some of the inconsistencies in Vargas's first declaration, and some impermissible new information contained in his second one: "Based solely on the evidence defendants submitted in their moving papers, it can be reasonably concluded that (1) [Nieblas] did not create the credentials allegedly used to sign the arbitration agreement, and (2) defendants, through their agent [ ] Vargas, had possession, custody, and control of [Nieblas's] credentials. As such, [she] argued in opposition that defendants had failed to authenticate the electronic signature because the credentials were not secure and [ ] Vargas or someone else who had access to the credentials could have signed the arbitration agreement on a computer. [¶] On reply, defendants submitted an additional declaration by [ ] Vargas in which he purports to provide new details about how Nieblas allegedly signed the arbitration agreement electronically. [He] claims he turned his laptop screen to [ ] Nieblas and that [she] used the

---

[5] Nieblas does not challenge the court's ruling on fraud or unconscionability.

touchscreen on [his] laptop computer to indicate assent to the arbitration agreement. These and other details purporting to establish [her] assent to the arbitration agreement are new and were not included in the moving papers." (Some capitalization omitted.)

Nieblas also proposed that the settled statement mention the following: "Defendants' new evidence is improper and should not be considered because it does not respond to new issues raised in the opposition, but instead addresses an issue defendants raised in the moving papers and which defendants had the burden of establishing—that [ ] Nieblas signed the declaration electronically and that the electronic signature is authentic. [She] also argued that, if the court was inclined to consider new evidence on reply, [she] should have an opportunity to respond[.]" (Some capitalization omitted.)

Nieblas proposed that the settled statement specify that in contesting the court's tentative ruling, her counsel requested an evidentiary hearing, which could assist the court in weighing credibility, including depositions of the declarants and production of computer data pertaining to the alleged authentication of her electronic signature.

The court did not adopt Nieblas's proposed settled statement; rather, it adopted its tentative ruling as its statement of decision.

DISCUSSION

I. *Appealability of the Court's Order*

Nieblas contends the order is appealable under the "death knell" doctrine because she brought this action on behalf of all other non-exempt employees, but the court ended the action for all class members except her.

Beshay Foods contends the court's order compelling arbitration is interlocutory and therefore not appealable under the one final judgment rule

11

set forth in Code Civil Procedure section 904.1.  It argues without citation to the record that the court properly dismissed Nieblas's class claims "without prejudice."

*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196 is instructive.  The court reviewed a trial court's order that compelled arbitration, dismissed the appellant's class and representative claims without prejudice, and stayed trial court proceedings pending completion of the arbitration of his individual claims.  (*Id.* at p. 199.)  Under his arbitration agreement with his employer, the appellant had "agreed to arbitrate all employment claims and waived the right to arbitrate claims as a class or collective action."  (*Ibid.*)  Although the court recognized that "a different plaintiff who ha[d] not signed the [arbitration agreement] could be substituted in as the representative plaintiff for th[e] claim[,] . . . respondents submitted a declaration to the trial court stating '[a]ll personnel who commence or continue employment' are required to comply with the arbitration policy."  (*Id.* at p. 202.)  Since, based on the respondent's declaration, "no employees [ ] could assert the representative . . . claim," the court found that the trial court's dismissal of the claims without prejudice did not preclude the application of the death knell doctrine.  (*Ibid.*)

The same analysis applies here.  We find nothing in the court's ruling specifying that its dismissal of the class claims was without prejudice.  But that is not a requirement in any event.  The death knell doctrine requires the order be "a de facto final judgment for absent plaintiffs."  (*In re Baycol* (2011) 51 Cal.4th 751, 759.)  Here, the arbitration agreement's class action waiver provision prohibits an employee from arbitrating class claims, requiring instead that such actions be litigated in civil court.  As there are no employees who could assert the class claim, the order is effectively a final

12

judgment for the nonparty employees' claims.  We therefore conclude that by dismissing the class and instructing Nieblas to arbitrate her claims individually, the court dealt the "death knell" to class litigation through arbitration.  Consequently, Nieblas's appeal is proper.

## II.  *No Oral Testimony Requirement*

Nieblas contends the court abused its discretion by failing to hear oral testimony to make a credibility determination in light of the conflicting declarations that she and Vargas submitted regarding whether she electronically signed the arbitration agreement.  She argues the court could not assess credibility based solely on the parties' moving and opposing papers.  As she did in her proposed settled statement, she challenges Vargas's credibility based on his two declarations:  "Vargas's story of how Nieblas allegedly signed the arbitration agreement changed from his first declaration to his second.  The new, different, and inconsistent facts between Vargas's two declarations, as well as his bias, undermine [his] credibility."

Beshay Foods counters that the court did not err:  "The record also shows . . . the trial court considered both parties evidence [*sic*], their arguments, and thereafter decided not to hold an evidentiary hearing, given the preceding.  . . .  While the declarations may have provided some areas of conflicting information as to [Nieblas's] denial in opposition that she signed or consented to the arbitration agreement, [she], among other things, did **not** deny meeting with Vargas on April 5, 2017, did **not** deny that she met with him to go over the onboarding process, and did **not** deny that Vargas went through the onboarding process with her.  . . .  [¶]  Moreover, [Nieblas] did not, and does not, dispute that she accepted the terms of the arbitration agreement."  (Some capitalization and footnote omitted.)

13

Under Code Civil Procedure section 1281.2, "a trial court must grant a motion or petition to compel arbitration only 'if it determines that an agreement to arbitrate the controversy exists.' The court makes this determination in a summary process. [Citation.] '[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164.) However, oral testimony is not mandatory, as the California Supreme Court has stated: "There is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony. Nonetheless, we agree that where . . . the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination." (*Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 414.)

"The burden of persuasion is always on the moving party to prove the existence of an arbitration agreement with the opposing party by a preponderance of the evidence," but the burden of production involves a three-step process." (*Gamboa v. Northeast Community Clinic, supra*, 72 Cal.App.5th at pp. 164-165.) At the first step, the moving party bears the burden of producing prima facie evidence of a written agreement to arbitrate, either by stating the provisions verbatim, or "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060.) The moving party "is not required to authenticate

14

an opposing party's signature on an arbitration agreement as a preliminary matter" (*Ruiz v. Moss Bros Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 (*Ruiz*), italics omitted), and "the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219). If the moving party meets its initial burden of production, the burden shifts to the party opposing arbitration to produce evidence challenging the authenticity of the agreement. (*Gamboa*, at p. 165.) If that burden is met, "the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Ibid.*)

The California Supreme Court has held that a trial court's judgment or order receives the same deference whether it is based on declarations and written evidence or oral testimony. (*People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. 7; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 ["Even though contrary findings could have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations"], italics and fn. omitted.)

We review for an abuse of discretion the trial court's decision of whether to hear oral testimony. We evaluate whether the trial court exceeded the bounds of reason. A merely debatable ruling cannot be deemed an abuse of discretion. An abuse of discretion may be demonstrated by showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1203.)

There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. If the court's order is based on a decision of

fact, then we adopt a substantial evidence standard. Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. (*Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 279.)

There is no dispute that under the three-part test to determine the existence of an arbitration agreement, Beshay Foods submitted a copy of the arbitration agreement and thus satisfied its burden of presenting "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal v. Great Western Financial Securities Corp., supra,* 14 Cal.4th at p. 413.) The court stated that "[Beshay Foods] provided an initial declaration with the motion that (1) detailed the security precautions regarding the transmission and use of a job applicant's password; and (2) detailed the steps the applicant would have to take to place her name on the signature line of the agreement. This satisfies the burden to show the electronic signature is valid." Nieblas does not challenge this finding.

Next, there appears to be no dispute Nieblas met her burden of producing evidence to challenge the authenticity of the agreement. Although the court did not set forth its analysis of this issue, it stated, "The primary issue raised by [Nieblas] is her claim that she does not remember signing the agreement."[6] It immediately proceeded to set forth Beshay Foods's evidence

_____

[6] Nieblas contends the court inaccurately stated her position: "Although [she] provided specific recollection of the [ ] meeting and emphatically denied signing the arbitration agreement or touching a computer at all during the onboarding process, the court begins its statement of decision with a plainly *inaccurate* framing of Nieblas'[s] primary claim in opposition to the motion: 'The primary issue raised by [Nieblas] is *her claim* that *she does not remember signing* the agreement.' " For present purposes, we conclude that Nieblas met her burden of challenging the authenticity of the agreement. We apply the doctrine of implied findings to presume the court made factual findings to support its order. (*Ruiz, supra,* 232 Cal.App.4th at p. 842.)

16

in reply, pointing out that in his second declaration Vargas "emphatically denies conclusions in plaintiff's declaration."

The dispute here is whether, as to the third step, Beshay Foods met its ultimate burden to establish a valid arbitration agreement existed between the parties. In answering this question in the affirmative, the court stated that in his reply declaration Vargas "provides a detailed account of what occurred and states that he never completed the computer process for [Nieblas]. He specifically turned the laptop computer to her and asked her to complete the process. All [Beshay Foods] employees are provided unique usernames, badge IDs, and passwords in order to log into [its] onboarding software and then electronically access, review, and sign documents, including arbitration agreements. . . . [Nieblas] was shown and reviewed the agreement on a laptop computer, with assistance as needed by [ ] Vargas. . . . [He] explained both the documents itself [*sic*] and how arbitration works to her. . . . [He] further explained that [Nieblas] was required to sign the arbitration agreement to work at [Beshay Foods]. . . . As part of her onboarding process, [ ] Vargas observed [Nieblas] click continue on the Laptop's touchscreen, which [Nieblas] was using for her onboarding, to confirm her agreement to arbitrate and electronic signature to the agreement. . . . [¶] Based on the declarations, [ ] Vargas assisted [Nieblas] during her onboarding process and helped her review, then complete, various forms to the extent she could not do so herself. However, [he] is adamant that [Nieblas] logged herself into the onboarding program and continued forward using her finger on the laptop's touchscreen to click the continue button. . . . Once [she] clicked the continue button after logging in, the onboarding documents began to populate on the screen and [she] used her

17

finger on the laptop's touch screen to answer 'Yes/No' questions, as well as to scroll up and down on the documents to review and complete them."

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) Civil Code section 1633.9 governs the authentication of electronic signatures. It states: "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable. [¶] (b) The effect of an electronic record or electronic signature attributed to a person under subdivision (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law."

Thus, to authenticate an electronic signature on an arbitration agreement, the moving party must show that the electronic signature "was the act of the person" opposing the petition to compel arbitration. (Civ. Code, § 1633.9, subd. (a).) The moving party may make this showing "by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545; see also *Espejo v. Southern California Permanente Medical Group, supra*, 246 Cal.App.4th at p. 1062; *Ruiz, supra*, 232 Cal.App.4th at p. 844.) A summary assertion in a declaration that the opposing party electronically signed the arbitration agreement is insufficient;

18

there must be facts explaining how the signature "came to be placed" on the agreement. (*Ruiz, supra*, at pp. 843-844; see *Fabian v. Renovate America Inc.* (2019) 42 Cal.App.5th 1062, 1069-1070.) An electronic signature has the same legal effect as a handwritten one. (Civ. Code, § 1633.7, subd. (a).) "[T]he burden of authenticating an electronic signature is not great." (*Ruiz, supra*, 232 Cal.App.4th at pp. 844-845.)

Nieblas contends that in light of the contrasting declarations, the court could not make a credibility determination in favor of Beshay Foods solely based on its moving papers and Vargas's declarations; rather, it should have heard oral testimony. Even if we agreed with Nieblas that on this record the trial court would have been well advised to do so as the "better course" (*Rosenthal v. Great Western Financial Securities Corp., supra,* 14 Cal.4th at p. 414), "[n]evertheless, 'better course' is not synonymous with 'only reasonable course,' and the fact that the 'better course' was not pursued does not mean that the court abused its discretion." (*Jones v. Solgen Construction, LLC, supra,* 99 Cal.App.5th at pp. 1203-1204.)

Here, the court was well aware of the parties' conflicting declarations. Further, Nieblas put the court on notice in her opposition papers and in her proposed settled statement that it had the option of hearing oral testimony to resolve the differences between the parties regarding whether Nieblas had electronically signed the arbitration agreement. Nevertheless, the court did not deem it necessary to do so. The court believed it had sufficient information before it to resolve the key disputes and rule on the motion to compel. We also take into consideration the undisputed aspects of Nieblas's declaration and Vargas's declaration in reply: Vargas and Nieblas met in April 2017 to discuss her new hire, he asked her for certain background information about herself, and he used his laptop to enter the data she gave

19

him. The court could have reasonably concluded Vargas was credible in stating in his declaration that based on his onboarding over 100 employees, he had a pattern of practice that he used, and that he never signed any employee's electronic documents for them. Instead, he explained the arbitration agreement and allowed the individual to acknowledge agreement by clicking "continue" on the electronic device. Under the circumstances, we cannot say the court's decision to not hear oral testimony was so arbitrary, capricious, or patently absurd that there was a miscarriage of justice. Therefore, its decision was not outside the bounds of reason and did not constitute an abuse of discretion.

On the question of whether substantial evidence supported the court's conclusion to rely on Vargas's declaration in ruling Beshay Foods carried its burden of persuasion, we contrast his declaration with one found inadequate in *Ruiz, supra,* 232 Cal. App.4th at page 844. The court in *Ruiz* found the declarant "did not explain that an electronic signature in the name of [Ruiz, the plaintiff,] could only have been placed on the 2011 agreement (i.e., on the employee acknowledgement form) by a person using Ruiz's 'unique login ID and password'; that the date and time printed next to the electronic signature indicated the date and time the electronic signature was made; that all [defendant's] employees were required to use their unique login ID and password when they logged into the [human resources] system and signed electronic forms and agreements; and the electronic signature on the 2011 agreement was, therefore, apparently made by Ruiz on September 21, 2011, at 11:47 a.m. Rather than offer this or any other explanation of how she inferred the electronic signature on the 2011 agreement was the act of Ruiz, [the declarant] only offered her unsupported assertion that Ruiz was the person who electronically signed the 2011 agreement. . . . This was not a

20

difficult evidentiary burden to meet, but it was not met here." (*Ruiz,* at p. 844.)

Here, by contrast, we conclude Vargas's declaration met the evidentiary burden because he stated he remembered giving Nieblas a unique login and password, and instructed her not to share it with anyone. He witnessed her clicking on the laptop, and he explained to her each document, including the arbitration agreement. He assisted her as she needed, but he never completed the signup process for Nieblas.

Nieblas contends Vargas undermined his credibility by changing his story, because in his first declaration "he claimed that defendants set up two computer terminals in the dining area of the . . . restaurant for employees to sign the arbitration agreement. . . . Vargas claimed he gave [her] a username and password to log onto defendants' onboarding program and gave her instructions how to do so." (Some capitalization omitted.) She adds that after she disputed that account in her opposition to the petition to compel arbitration, "on reply, Vargas gave a new story. The laptop that was conspicuously absent from his first declaration became central. . . . And it turns out that the two computer terminals defendants purportedly set up in the dining room and which defendants' originally claimed Nieblas used to sign the arbitration agreement . . . were not used after all." (Some capitalization omitted.)

But on appeal we are concerned only with the existence of substantial evidence, whether contradicted or not. As stated, "we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.) Under substantial evidence review, we neither judge

21

the credibility of witnesses nor reweigh the evidence.  (See *Fabian, supra*, 42 Cal.App.5th at p. 1067.)

Based on the foregoing, we reject Nieblas's claim that we should reverse the matter and remand it for the court to hear oral testimony.

## DISPOSITION

The order is affirmed.  Each party shall bear its costs on appeal.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.